## SNELL v. WHITE.

Opinion delivered January 28, 1918.

1. DEED—DEED AS MORTGAGE.—A conveyance absolute in form is presumed to be a deed, and, to overcome this presumption, in the absence of fraud, the evidence must be clear, unequivocal and convincing.

2. DEEDS—DEED AS MORTGAGE—FINDING OF CHANCELLOR.—Certain land was deeded by appellant and her husband to appellee, appellee then giving them back a contract of resale, appellee and her husband executing four promissory notes therefor. These notes were never paid. Held, the finding of the chancellor that this transaction was not intended as a mortgage from appellant to appellee would not be disturbed on appeal.

Appeal from Columbia Chancery Court; *James M. Barker,* Chancellor; affirmed.

*Joe Joiner* and *A. S. Kilgore,* for appellant.

1. The intention of the parties must govern as to whether the instrument was a deed or mortgage. 27 Cyc. 1007; 3 Pom. Eq. 1195; 103 Ark. 493; 46 *Id.* 129; 88 *Id.* 369.

2. The instrument was a mortgage to secure a loan, and such was the intention of the parties. There was a debt to be secured. 128 Ark. 67; Jones on Mortg., § 266; Devlin on Deeds, § 1118. See also 106 Mo. 278; 27 Cyc. 972; 3 Pom. Eq. 1195; 117 Ark. 388; 117 U. S. 681; 1 How. 118; 71 Col. 412; 85 Ill. App. 487; 132 N. Y. 531; 27 Cyc. 1014; 3 Pom. Eq. 1015; 21 W. Va. 415; 22 Fla. 654; 88 Ark. 299; 134 N. C. 596; 106 Mo. 278; 88 Ark. 337; 105 *Id.* 314; 75 *Id.* 551; 117 *Id.* 388; 38 *Id.* 207; 105 *Id.* 314; 75 *Id.* 551; 58 Ore. 98.

*McKay & Smith,* for appellees.

1. The deed conveyed the property absolutely and is not a mortgage, nor so intended. 75 Ark. 557; 1 Jones on Mort., par. 265; 88 Ark. 299, etc.

2. Appellant is estopped. 89 Ark. 349; 33 *Id.* 445; 91 *Id.* 148; 55 *Id.* 296; 24 *Id.* 401; 188 S. W. 571; 125 Ark. 146.

3. She is barred by laches. 10 R. C. L. 400; 74 Ark. 520; 55 *Id.* 85; 3 Bro. C. C. 640; 110 Ark. 24; 182 S. W. 272; 121 Ark. 617.

4. The findings of a chancellor will not be disturbed unless contrary to the clear preponderance of the evidence. 195 S. W. 674; 84 Ark. 429; 92 *Id.* 359; 129 Ark. 301.

*Stevens & Stevens,* for appellee White.

It was an absolute deed and so intended. No fraud is shown. 37 Ark. 146; 92 *Id.* 509; 75 *Id.* 554; 87 *Id.* 593; 88 *Id.* 299; 19 *Id.* 278; 31 *Id.* 163; 40 *Id.* 146; 80 *Id.* 543; 99 *Id.* 260, etc.

George Ann Snell instituted this suit in the chancery court against B. W. White and L. H. Pearce, and asked that the deed executed by her to Pearce for 120 acres of land be declared a mortgage, that the mortgage be declared satisfied and that her title to said lands be confirmed and quieted and that she have damages for the unlawful cutting of certain timber upon said lands.'

The answer of the defendants contained a general denial of the allegations of the complaint, and the defendants asserted title in themselves by virtue of the deed to Pearce from George Ann Snell.

George Ann Snell testified for herself substantially as follows:

I am the owner of the land in controversy, being 120 acres situated near Calhoun in Columbia County, Arkansas. My children and I worked and paid for the land. My husband gave the mortgage on part of my land to John Wyrick to secure a debt of his own. In February, 1906, I executed a mortgage to L. H. Pearce on forty acres of my land in consideration that he pay the debt of my husband secured by the former mortgage. Mr. Pearce told me that the instrument that I executed in his favor was a mortgage. He owned lands near mine, and in going to his property frequently he stopped at our house. He always told me that he did not want the land but that all he wanted was the payment of his debt. Later on B. A. White came to me and told me that I never could pay the place out as long as Pearce had hold of it. He suggested that he would pay it out and then we would fix matters up so that I could pay him. We did not enter into any agreement but he bought a part of the land from Pearce anyway. When we heard of this, we sent for him to come to our house. White said he was out $1,000 and that we could have the land for that amount. After that he just came on the land and began to cut the timber. On cross-examination she stated that she could not read nor write, that she well remembered the day Pearce told her

that she had executed a mortgage on the land and stated that Pearce did not enter into a contract with her husband on that day to convey the land back to him for the sum of $506. On redirect examination she stated that she had cleared three acres on the land and had torn down the old house and moved it to another place on the land; that she rebuilt the house with the old lumber and some new lumber; that Pearce never did say anything about renting the place to her and never did make a contract about renting it to her. Her testimony was corroborated by that of her husband.

Her two daughters testified that Pearce used to come to their place and look into the barn, kitchen and other places for things; that he would eat dinner there sometimes and often told their mother that all he wanted was his money and that he did not want their place.

L. H. Pearce testified substantially as follows: At the request of John Snell I took up a mortgage that he and his wife had executed to J. C. Wyrick. I think I paid $180 for them. I also paid off a mortgage for them to E. E. Henry for $100. On the 13th day of February, 1906, John Snell and George Ann Snell, his wife, executed a deed to me to fifty-two acres of land in which the consideration recited in the deed was $300. This consideration represented the mortgages I have paid off for them and maybe a little money that I furnished them. Forty acres of this land belonged to George Ann Snell and the remaining twelve acres to her husband. I did not know at the time that she owned any of the land. On the same day I executed a written contract agreeing for a resale of this land together with other lands near there to John Snell for the sum of $506, payable in four payments due respectively the first day of October, 1906, 1907, 1908 and 1909. That contract was on a written form and provided that time was the essence of the contract and that upon the failure of Snell to make any of the payments at the time specified that the contract on that date should be null and void, and that all the rights and interest in the premises should terminate; that thereafter Snell should

pay rent at the rate of $100 per year. On December 8, 1906, John Snell and George Ann Snell executed a deed to L. H. Pearce for eighty acres of land. George Ann Snell relinquished dower in this deed just as she did in the deed dated February 13, 1906. On December 14, 1906, George Ann Snell executed a warranty deed to me for the 120 acres of land owned by her. The consideration recited in this deed was $250. It was filed for record on November 1, 1916. At this time I executed a written contract with John Snell to resell land to me. It was on the same printed form as the other contract. It was executed in the place of the former contract. Afterwards Snell failed to make the payments as required by the contract and his contract was declared forfeited. After that the Snells began to pay rent to me. I also furnished them. They failed to pay the amounts they owed me, and after a few years I turned them over to White. I agreed that I would take one-fourth of the cotton raised by them for rent and would waive my landlord's lien except for that amount. This agreement went into effect in 1910, and from then on White furnished them and they paid me one-fourth of the cotton as rent. They never made any of the payments on the place, and, as above stated, did not even pay me the amount due me for rent and for supplies furnished them. I had lost the second contract for the sale of the land entered into with Snell. I made no effort to keep either one of the contracts for the reason that they were forfeited years ago. I just happened to find the first contract among some old papers and exhibited it in evidence.

B. A. White testified substantially as follows: I have known John and George Ann Snell for seventeen years, and lived about a mile from them. I am a merchant and farmer. I first furnished them several years ago. Then they wanted some money and Pearce let them have it and took a deed to their land. He furnished them for two or three years and then they came back to me and I have been furnishing them since then. I have been paying Pearce the rent since I began to furnish them again.

I made Snell get a statement from Pearce about the rent before I would furnish them. Pearce gave me a written statement to the effect that all he wanted as rent was one-fourth of the cotton. I finally bought the place from Pearce for $1,000. I made a verbal agreement with them to let them have it back for that amount. The record showed that Pearce paid taxes on the land for eight years consecutively up to the bringing of this suit. The suit was commenced on December 21, 1916. Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of the defendants and a decree was entered accordingly. The plaintiffs have appealed.

HART, J., (after stating the facts). In *Hays* v. *Emerson,* 75 Ark. 554, the court said: "It is insisted, however, that the consideration for the deed being a preexisting debt owing by the grantor to the grantee, the contemporaneous agreement for an immediate resale of the property to the grantor on a credit for the same price, stamps the conveyance as a security for the debt merely, and not an absolute conveyance, regardless of the real intention of the parties. Such is not the law. The contemporaneous agreement for a resale and purchase does not, of itself, make the deed a mortgage. The conveyance must be judged according to the real intent of the parties. If there is a debt subsisting between the parties, and it is the intention to continue the debt, it is a mortgage; but if the conveyance extinguishes the debt and the parties intend that result, a contract for a resale at the same price does not destroy the character of the deed as an absolute conveyance." This principle was recognized in *Wimberly* v. *Scoggin,* 128 Ark. 67, 193 S. W. 264, and in addition the court said:

(1) "For the purpose of ascertaining the true intention of the parties, it is a well established rule that courts will not be limited to the terms of the written contract, but will consider all the circumstances connected with it, such as the circumstances of the parties, the property conveyed, its value, the price paid for it, defeasance,

verbal or written, as well as the acts and declarations of the parties, and will decide upon the contract and the circumstances taken together.'' In both those cases, it was recognized that a conveyance absolute in form is presumed to be a deed, and that to overcome this presumption and to show the instrument to be a mortgage, the evidence, in the absence of fraud or imposition, must be clear, unequivocal and convincing.

(2) Tested by these well established principles of law, the decision of the chancellor was correct and must be upheld on appeal. The record sets out the testimony of the parties in full, but it is not practical to set out all the evidence in detail in this opinion. A careful examination of the record, however, shows that Pearce was trying to state the testimony as he recollected it. He stated that in February, 1906, when the land was first conveyed to him that it was not worth more than $2 per acre; that he owned over one thousand acres of other land in that immediate neighborhood and knew their value. His testimony in this respect was not attempted to be contradicted. When his whole testimony is read together, it is fairly inferable that when the deed of the date of February 15, 1906, was executed that he thought the lands in question belonged to John Snell, for he took a deed from John Snell, and George Ann Snell only relinquished dower in the deed. On the same day he executed a written contract with John Snell for a resale of these lands to him and in the contract also embraced other lands of his own. The consideration in the deed to Pearce was $300. In the contract for a resale of the land the consideration was $506, evidenced by the four promissory notes of John Snell. This was a circumstance tending to show that it was not the intention of the parties to consider the transaction as a mortgage from Snell to Pearce. Only forty acres of the lands in question were embraced in this deed. In December John Snell executed a deed to Pearce for the remaining eighty acres. In this deed George Ann Snell relinquished dower. On the 14th day of December, 1906, George Ann Snell executed a deed to Pearce for the

120 acres of land in controversy and the consideration is recited to be $250.

It is fairly inferable from all the testimony in the record that it was ascertained by Pearce that the title to the land was in George Ann Snell instead of her husband, and for that reason the last mentioned deed was executed by George Ann Snell. This conclusion is borne out by the fact that Pearce testified that on that day he again agreed to resell the land to John Snell and that a written contract to that effect on the same printed form as the first contract of resale was entered into between them. Pearce said that he made no effort to keep either of these contracts because they had ceased to be of any binding force because Snell had failed to make the payments required; that he only happened to have the first contract because it was among some old papers. According to the testimony of both Pearce and White the Snells began to pay rent in 1910 to Pearce. They continued to pay rent to him until the date of bringing this suit. For the eight years prior to the institution of this action Pearce had been paying the taxes on the land. It does not appear that the land had risen in value much until a few years before the institution of this action. It is true this testimony is contradicted to a great extent by the testimony of George Ann Snell and her husband, but they make no attempt to explain why they permitted Pearce to pay the taxes on the land, and to pay rent to White for him.

Tested by the rule above announced, the chancellor was warranted in holding that the conveyance to Pearce was an absolute deed and was not a mortgage. The plaintiffs forfeited their rights under the contract of sale executed by Pearce by not making the payments required by the contract, and the chancellor was justified in so holding under the evidence.

It follows that the decree must be affirmed.