AVERA *v.* REYNOLDS.

4-6713 160 S. W. 2d 48

Opinion delivered March 23, 1942.

*J. B. Milham,* for appellant.

*Gaughan, McClellan & Gaughan,* for appellee.

GRIFFIN SMITH, C. J. The appeal is presented without bill of exceptions; hence, we are confined to the record proper. It discloses that appellant purchased of Rudolph Hayes 170 acres December 31, 1936, and executed mortgage to secure $4,000 in notes. These were sold by Hayes to J. D. Reynolds April 12, 1937.

The decree finds that appellant borrowed $3,000 of Reynolds, securing the loan by a second mortgage on the

land conveyed to her by Hayes. January 3, 1939, appellant deeded the land to Reynolds. Other property was included in the conveyance.

By contemporaneous contract Reynolds agreed to make application to St. Louis Federal Land Bank, or some other governmental agency, for $7,000, "and an amount representing interest on $7,000 at the rate of four per cent. per annum from December 31, 1936, together with any additional amount which may be obtained."

If the loan should be made for an amount in excess of $7,000 and interest, the excess was to be used in making improvements. Upon receipt of proceeds of the loan, Reynolds would reconvey, appellant assuming the indebtedness so incurred. In the event Reynolds failed to procure the contemplated loan, appellant's obligation, at the expiration of one year from January 3, 1939, was to surrender possession. A grace period of thirty days from January 3, 1940, was agreed upon. Alternatively, appellant had the option to dispose of the land, "or a sufficient amount to pay Reynolds $7,000, plus interest." If sale should be consummated, Reynolds was to "at once convey the land and other property" to appellant.

As rental for 1939, appellant agreed to pay $5 per acre, "per government measure." If appellant should "arrange" to purchase from Reynolds "within the one year period," the rental became a credit on the amount due Reynolds.

Other findings by the chancellor are: Appellant became further indebted to Reynolds on account of sums expended by him for her account. Early in January, 1940, appellant requested Reynolds to convey the land to Fred Edwards.[1] The consideration was $8,000, of which $1,500 was paid, and seven notes aggregating $6,500 were given. When this conveyance was made, appellant owed Reynolds $10,245.89.

Edwards permitted appellant to use the land during 1940, and financed her farming operations. His advances

---

[1] Edwards died *pendente lite*, and the suit instituted by appellant was revived in an appropriate manner.

amounted to $1,725.15, secured by chattel mortgages. Certain credits were due appellant. Net indebtedness to Edwards was $1,044.80. Reynolds' debt, with interest, was $11,270.47:—total amount due Reynolds and Edwards, $12,315.27.

The court construed appellant's deed and the contractual options. They were, it was decreed, *"in the nature* of a mortgage''; and the obligations due Reynolds and Edwards, while a charge upon the land, should not operate absolutely to prevent appellant from redeeming. Therefore, said the court, if appellant should pay $12,315.27 into the registry not later than September 1, 1941, redemption of land and personal property would be permitted.

Appellant's principal contention is that the chancellor erred in refusing to condition redemption upon payment of $6,760, instead of $12,315.27, ''or whatever sum the court found to be owing January 3, 1939.'' Other exceptions are: (a) After holding that appellant's deed to Reynolds was a mortgage on account of the contract, it was error to require payment by September 1, on pain of having title divested out of appellant and vested in Edwards. (b) It was improper to require both debts— the one due Edwards and the one due Reynolds—to be paid as a condition precedent to redemption. (c) Appellant should have been permitted to try the issues raised in respect of possessory rights to the mules, corn, tools, and other personal property. (d) Certain miscellaneous errors were committed. (e) The court reporter should have been required to transcribe and file his notes, thereby providing a record. (f) The debt due Edwards ought not to have been included in the total required to be paid in order to redeem. (g) The right of redemption could not be barred without foreclosure and sale of the property.

(a).—We do not think it was the chancellor's intention to hold that the deed and contract constituted a mortgage in legal contemplation. What the court said was that the transaction ''was in the *nature* of a mortgage.'' There was no cancellation of the deed; merely an

extension of time within which appellant might redeem. This was an appropriate gesture of grace on the part of the court.

(b) (c) (d).—Reynolds conveyed to Edwards at appellant's request, and by express contract the relationship of landlord and tenant existed between Reynolds and appellant during 1939, and between Edwards and appellant during 1940. The decree recites oral testimony. We do not know what this testimony was, and must presume that it was sufficient to sustain the court's findings.

(e).—In declining to direct the reporter to supply appellant with a transcription of evidence, the court stated that no request was made for an order to this effect until six days before the six-months period for appealing would expire, and "it would be physically impossible for the reporter to transcribe four full days of testimony and numerous exhibits" within the allotted time. In view of appellant's delay in applying for the order, and the court's determination of a factual element, the refusal to comply with the request will not be disturbed.

(f).—In the absence of a bill of exceptions, we cannot say the court erred in including the Edwards debt.

(g).—As has already been said, the right of redemption was an act of grace upon the part of the chancellor, rather than a substantive right inhering in appellant.

Affirmed.