HARRIS *v.* SIMON.

5-741                                              283 S. W. 2d 349

Opinion delivered November 7, 1955.

492

*Roger L. Murrel* and *Arthur G. Frankel,* for appellant.

*Bailey, Warren & Bullion,* for appellee.

ED. F. McFADDIN, Associate Justice. Appellant brought this suit to have his warranty deed to appellee declared to be a mortgage. The Chancery Court refused the prayed relief; and there is this appeal.

In 1949 appellant's wife obtained a divorce, and appellant was required to pay her $800.00 plus court costs. He obtained the money from appellee (acting at all times by her husband, C. M. Simon, Jr.). The payment, by appellee's check, was made in the office of the late Honorable Fred Isgrig, who had represented the wife, Bertie Harris, in the divorce proceedings. The Notary Public, who took the acknowledgment of the warranty deed to appellee from appellant and his divorced wife, testified:

''When they gave me a deed to have signed and have notarized I said, 'Will, this isn't a mortgage; this is a deed'; and Mr. Simon said, 'That is all right,'; and Will said, 'I have confidence in Mr. Simon'; and I thought it was strange at the time they would do that.''

At all events, the deed was signed and acknowledged on September 16, 1949 by both Will Harris and his divorced wife, Bertie[1] Harris; and Mr. Simon delivered the checks at the same time. The appellant, by monthly payments—claimed by him to be repayments and by appellee to be rent—continued to live on the conveyed prem-

---

[1] In some places the name is spelled "Birdie"; but when she signed the deed she signed it "Bertie Harris."

ises until 1950 or 1951 when he moved because—as he says—of the threats of Mr. Simon. Appellant then consulted an attorney, who died before instituting this suit; and thereafter appellant employed his present counsel and this suit was filed in August, 1954, in which appellant claimed that all he ever borrowed from appellee was $800.00 and that the entire transaction was a mortgage instead of a deed.

But appellee established, by cancelled checks, documentary evidence, and the testimony of entirely disinterested witnesses: that on September 6, 1949 appellant listed the property in dispute with a local real estate agent for sale at a price of $2,300.00; that the real estate agent went to Mr. Simon and showed him the property and Simon made an offer of $1,700.00 to purchase the property with an abstract to be furnished; that such offer was transmitted by the real estate agent to the appellant; and that the offer was accepted by the appellant in writing. The originals of the instruments were introduced in evidence, as well as the original settlement statement of the real estate agency, as follows:

"Sept. 16th, 1949

## SETTLEMENT STATEMENT

### For Will Harris and Birdie Harris

Account sale of 1704 So. Cedar (All Lots 16 and 17, except N 20 ft Lot 17 in Block 62 Braddock's Addition) to M. W. Simon, Trustee

| Agreed sale price | Cash | $1,700.00 |
|---|---|---|

DISBURSEMENTS AND ADJUSTMENTS

| | |
|---|---|
| Abstract fee | $ 44.00 |
| Revenue stamps on deed | 2.20 |
| Balance of Court Costs Circuit Court case Birdie Harris v. H. C. West | 11.00 |
| Balance due, Universal CIT Corpn (new roof) | 251.90 |

| | |
|---|---|
| Sales commission (agreed) | 100.00 |
| Total | $ 409.10 |
| Cash received | 1,700.00 |
| Expended | 409.10 |
| Balance due Will Harris and Birdie Harris | $1,290.90" |

Appellee introduced the cancelled checks totalling $1,700.00, corroborating the settlement statement, and including the checks for $1,290.90 balance due Will and Bertie Harris. The real estate agent testified that, at the time of the conveyance, the property was worth about $2,000.00, so there was no great disparity between the value of the property and the $1,700.00. Appellee has made substantial improvements to the property.

As to the significance of the conversation before the Notary Public, as previously copied, the appellee's evidence disclosed that, either at the time of the deed or some six months thereafter, appellee gave appellant some sort of option to repurchase the property; and that when appellant defaulted on the payments due on that contract, appellee caused appellant to vacate the premises. But *appellant denied* any such repurchase option and did not ask that any repurchase instrument be considered as constituting the entire transaction to be a mortgage. In the light of appellant's denial of the repurchase agreement, we do not have before us a situation where a deed was made with an option to repurchase, as existed in such cases as *Oliver* v. *Watts,* 194 Ark. 644, 109 S. W. 2d 111; *Avera* v. *Reynolds,* 203 Ark. 1060, 160 S. W. 2d 48; *Sturgis* v. *Hughes,* 206 Ark. 946, 178 S. W. 2d 236; or *Newport* v. *Chandler,* 206 Ark. 974, 178 S. W. 2d 240, 155 A. L. R. 1096, where there is also an annotation.

In the light of all the evidence, we cannot say that the Chancellor was in error in dismissing appellant's complaint. The burden was on the appellant to prove, by evidence that was clear, unequivocal and convincing,

that the deed was a mortgage. *Snell* v. *White,* 132 Ark. 349, 200 S. W. 1023; *Henry* v. *Henry,* 143 Ark. 607, 221 S. W. 481; *Hudgens* v. *Taylor,* 206 Ark. 507, 176 S. W. 2d 244; *Newport* v. *Chandler,* 206 Ark. 974, 178 S. W. 2d 240; and *Landers* v. *Denton,* 213 Ark. 86, 209 S. W. 2d 300. Appellant failed to discharge that burden.

Affirmed.

Justice ROBINSON not participating.

Justices HOLT and WARD dissent.