GATES v. McPEACE.

Opinion delivered February 10, 1913.

1. MORTGAGES—DEED ABSOLUTE ON ITS FACE.—A deed absolute on its face may be shown to be a mortgage, and is a mortgage if given to secure the payment of an indebtedness. (Page 587.)

2. MORTGAGES—DEED ABSOLUTE ON ITS FACE.—The presumption is that a deed is what it purports to be, and to overcome this presumption and establish its character as a mortgage, the evidence must be clear, unequivocal and convincing. (Page 587.)

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Trimble & Trimble,* for appellant:

A deed absolute on its face is presumed to be what it purports to be and evidence to overcome it must be clear, unequivocal and convincing. 88 Ark. 299; 75 Ark. 551.

Appellees knew what sort of an instrument they signed, and if they did not they are responsible for the omission. 71 Ark. 185.

A deed given in consideration of the extinguishment of an existing indebtedness with an agreement to resell, by a fixed time, constitutes an absolute deed and not a mortgage. 110 Penn. 521.

*James B. Gray,* for appellees:

The chancellor's finding will not be disturbed, unless clearly against a preponderance of the testimony.

The instrument signed was intended as a mortgage and parol evidence is admissible to show that fact. Pomeroy Eq. Juris., volume 3, paragraphs 1195-1196.

SMITH, J. Appelleees filed a complaint in the Lonoke Chancery Court against appellant, in which it is alleged that on or about May 9, 1911, they were indebted to R. A. Little in the sum of $2,700, balance of purchase

money on a tract of land, situated in that county, and that, being unable to pay this purchase money, which was long past due, they entered into an agreement with appellant by which he agreed to pay Mr. Little and give appellees three years' time in which to pay off said indebtedness. That when appellant paid this money, he demanded of appellees a deed instead of a mortgage, but stated at the time, if the money was paid to him within three years, he would reconvey the land. The complaint further alleged that appellant is attempting to sell the land, and will do so unless restrained. The court was asked to declare the deed to be a mortgage and that appellant be required to foreclose under said contract, if appellees do not tender the amount of money and interest due appellant.

The answer admitted McPeace's indebtednss to Little and his inability to pay, but denied all other allegations of the complaint, and alleged the fact to be that the debt due Little had long been due, and he had instituted a proceeding to foreclose his lien for purchase money, and had declined to give appellee further indulgence, and appellee had exhausted every effort to procure or borrow money to pay said debt, when he applied to appellant for a loan which was refused. That a proposition was made and accepted by which appellant bought the land for $2,700, and agreed to lease the land to appellee for the years 1911 and 1912 with the privilege of buying it back by January 1, 1913 for the sum of $4,000. That the deed was executed and delivered and the debt due Little was discharged, and appellee placed in possession of the land as appellant's tenant. That appellee occupied the land during the year 1911, but failed to pay the rent and thereby breached his contract of purchase, and that on December 1, 1911, McPeace advised appellant of his inability to pay the rent and surrendered his contract and agreed to its cancellation. That since the rescission of said agreement of lease and option to buy, and before the institution of this suit, the appellant had sold the land in controversy.

The agreement, which appellee made an exhibit to his answer, was as follows:

"This agreement made and entered into by and between J. M. Gates, party of first part, and Harrison McPeace and Charlotte McPeace, his wife, parties of second part.

WITNESSETH: That the said parties of second part have this day, for and in consideration of the sum of $2,700 and other good and valuable considerations, conveyed to said parties of first part the following described real estate, lying and situated in Lonoke County, Ark., towit:

(Lands described here same as in deed, as exhibit "A" to plaintiff's complaint.)

It is expressly agreed and understood by and between said parties that the conveyance of said property above described, by parties of second part to party of first part, is not a conditional sale, nor is it intended to operate as a mortgage.

Party of first part, in consideration of $350 per year, has this day leased to second party for the years 1911 and 1912, with understanding at expiration of said time, parties of first part agrees to sell to second parties said land for the sum of $4,000, if paid by January 1, 1913.

Dated May 27, 1911.

(Signed)   J. M. Gates, Party of First Part,

By their marks:           Harrison  X  Makepeace,
                          Charlotte  X  Makepeace.

Witnesses:  E. C. Holt and W. M. Morton."

The evidence to sustain the position of appellee consisted of that given by appellee and his wife and one CarlLee Cobb. The evidence of Cobb was to the effect that he had once offered McPeace $40 per acre for the land, there being 93.66 acres, and that it was still worth that amount of money, but that he did not buy because of the complications in the title. That after Gates had purchased the land, he had a conversation with him in regard to it, and was left under the impression that Gates only wanted the money he had put out on the land, and

did not want the land.  McPeace testified in his own behalf that Gates agreed to give him three years in which to redeem the land, and more than that if he got along well as his tenant.  That he cultivated the land during the year 1911, and on seventy acres of cleared land, made one bale of cotton and forty to fifty bushels of corn. He stated that he was still on the place, and had never agreed to give possession of it, and he denied that he and his wife had given a deed to the land, or had intended to do so, but had signed a paper so that Gates could get his money back, but he denied having signed any contract whatever for the repurchase of the land; but his evidence with reference to his possession and the terms of his agreement is neither consistent nor satisfying, and the same may be said of the evidence of his wife.

The evidence on the part of appellant is much clearer and more consistent.  A lady, who had worked in Gates's store, but who was not employed by him at the time her deposition was taken, stated that she was a witness to the execution of the deed, and saw McPeace and his wife sign and acknowledge it and heard the notary explain it to them.

Gates testified in his own behalf that he declined to make a loan on the land, but bought it, and took an absolute deed therefor, and then made the contract which he made an exhibit to his answer.  He says that McPeace, after remaining one year on the place, and making almost a total failure of his crop, came to him and said he wanted to give up his contract, and rent only three or four acres of the ground, and this agreement was made and the remainder of the land was rented to McPeace's son and two other negroes.

A witness, named Morton, who had been a bookkeeper for Gates, but who was not employed at the time of giving his deposition, testified that he took the acknowledgment to the deed and witnessed the contract, and he says the agreement was explained and his evidence corroborates that given by Gates.  E. C. Holt, the other witness to the deed and contract, testified that both instru-

ments were fully explained, and that McPeace and his wife said they fully understood what they were signing. A son of McPeace testified that at the time of the trade, his father told him what its terms were and when he went to Lonoke, Gates read the papers to him, and they were like his father had told him they were.

The court found that the deed to Gates was in fact intended to be a mortgage on said land to secure Gates for the sum paid by him as purchase money to R. A. Little, and decreed the same to be a mortgage, and that appellant was entitled to a lien for the money loaned and taxes paid with interest thereon for the years 1911 and 1912.

The plaintiff was given until January 1, 1913, to redeem said land by the payment to Gates of the sum decreed to him, and his deed was cancelled and set aside, and the title to the land divested out of Gates and invested in plaintiff, Harrison McPeace.

It is thoroughly well settled that a deed absolute on its face may be shown to be a mortgage, and is a mortgage if it is given to secure the payment of an indebtedness. But the presumption is, that the instrument is what it purports to be, and to overcome this presumption and to establish its character as a mortgage, the cases all agree that the evidence must be clear, unequivocal and convincing. *Rushton* v. *McIllvene*, 88 Ark. 299; *Hays* v. *Emerson*, 75 Ark. 551; *Williams* v. *Cheatham*, 19 Ark. 278; *Trieber* v. *Andrews*, 31 Ark. 163; *Harman* v. *May*, 40 Ark. 146. In our opinion, the evidence does not meet this requirement.

The decree of the court below is therefore reversed and the cause remanded with directions to dismiss the complaint.