## ANDERSON v. POWELL.

### Opinion delivered November 8, 1920.

1. MORTGAGES — ABSOLUTE DEED AS MORTGAGE.—In determining whether an instrument, absolute on its face, was intended by the parties as a mortgage, the court will consider all the circumstances connected with it, such as the circumstances of the parties, the property conveyed, its value, the price paid for it, defeasances, verbal or written, as well as the acts and declarations of the parties.

2. MORTGAGES—ABSOLUTE DEED—PRESUMPTION.—The presumption is that a deed absolute is what it purports to be, and, to overcome this presumption and establish its character as a mortgage, the evidence must be clear, unequivocal and convincing.

3. MORTGAGES—EVIDENCE AS TO CHARACTER OF INSTRUMENT.—In an action to have a deed absolute on its face declared a mortgage, evidence *held* to establish that the deed was intended as a mortgage.

Appeal from Chicot Chancery Court; *Joe S. Harris,* Special Chancellor; reversed.

*Williamson & Williamson,* for appellant.

1. Chancery cases on appeal are tried *de novo.* 125 Ark. 364; 93 *Id.* 394; 79 *Id.* 577; 99 *Id.* 218. The finding of the chancellor is persuasive only. 197 S. W. 1160; 75 Ark. 72.

2. B. A. Kimple could not pass any better title than she had, and the deed to her was only a mortgage. She was only a mortgagee, and Mary Powell took nothing better, and no better title than her grantor had, and her deed is subject to all the rights of Sarah Anderson, including, of course, the right to redeem. 70 Ark. 253. This case is squarely in point and entitles appellants to a reversal. See, also, 13 Cyc. 657 (d); 127 Ark. 204; 219 S. W. 15-18.

3. The Mary Powell deed is only a mortgage; it was made to secure a debt. 221 S. W. 465; 13 Ark. 126; 7 *Id.* 508; 5 *Id.* 321; 13 *Id.* 112; 31 *Id.* 62; 103 *Id.* 484; 88 *Id.* 299; 128 *Id.* 74; 234 *Id.* 79; 70 *Id.* 253; 40 *Id.* 146; 106 *Id.* 166; 110 *Id.* 632; 18 *Id.* 34; 27 *Id.* 404; 76 *Id.* 509; 109 *Id.* 335; 112 *Id.* 607; 38 *Id.* 207.

The consideration was grossly inadequate, as shown by the evidence, and appellants have discharged the burden of proof, and where even the intent of parties is doubtful, an instrument absolute in form should be construed to be a mortgage. 38 Ark. 217; 13 *Id.* 126.

4. On an accounting the rents have more than paid the mortgage debt and the legal title should be decreed in appellant.

*D. Dudley Crenshaw,* for appellees.

1. The burden was on appellants to establish their case by proof, clear, unequivocal and convincing. 221 S. W. 481; 151 *Id.* 243; 143 *Id.* 95; 87 *Id.* 1027; 101 Ark. 611; 105 *Id.* 314. The presumption is that a deed is what it purports, and to overcome that presumption the evidence must be as stated—clear and convincing. 106 Ark. 583; 153 S. W. 797.

2.  The finding of the chancellor will not be disturbed on appeal unless against the clear, preponderance of the evidence.   86 Ark. 212; 120 *Id.* 37; 185 S. W. 444; 169 *Id.* 961; 125 Ark. 572; 123 S. W..395.

3.  By the execution of her deed to appellee Mrs. Kimple conveyed both her legal and equitable title to appellee.   114 Ark. 121; 169 S. W. 238.   Kimple had full title when the deed was executed and the deed was absolute.   97 Ark. 588; 135 S. W. 361; 203 Mass. 328; 89 N. E. 381.

4.  The proof is not clear, unequivocal and convincing, as claimed by appellants, but the finding of the chancellor is supported by the great preponderance of the testimony.

HUMPHREYS, J.   This suit was instituted by appellants against appellee in the Chicot Chancery Court to have a deed, absolute on its face, executed by Mrs. B. A. Kimple to Mary Powell, of date March 6, 1915, conveying lot 15, block 1, Holland's Addition to the town of Dermott, Chicot County, Arkansas, declared a mortgage in fact, for its cancellation, for the investiture of the title to said real estate in appellant, Sarah Anderson, and for an accounting of rents and profits since March 6, 1915. The bill, in substance, alleged that, at the time of the conveyance aforesaid, Mrs. B. A. Kimple held the fee simple title to said real estate by deed, which was in fact a mortgage, as security for the balance of the purchase price of $41 of said real estate, evidenced by notes in the sum of $3 each, executed by Sarah Anderson to her; that the original purchase price was $145, but that the said Sarah Anderson had reduced the amount to $41 by payments from time to time; that, being unable to pay the indebtedness and desirous of doing so, she entered into an agreement with John Powell, by which he was to pay the balance due Mrs. B. A. Kimple and take a deed to his wife, Mary A. Powell, as security for the amount; that he was to take possession of and rent the property until the amount was repaid, at which time the property was to be conveyed by Mary Powell to Sarah

Anderson; that her son, Alfonzo Anderson, occupied the premises and paid $3 a month therefor for twenty months, or a total of $60; that appellee has had possession and rented the property to other parties since that time, but has refused to make an accounting or to convey the property to appellant, Sarah Anderson, as per the agreement.

Appellee filed answer, denying all the material allegations in the complaint, and alleging that Mrs. B. A. Kimple conveyed the absolute title to said real estate to the said Mary Powell for a consideration, and not in trust to secure the balance of the purchase money due from the said Sarah Anderson to Mrs. B. A. Kimple. The prayer of the answer was for a dismissal of appellants' bill for the want of equity.

The cause was submitted upon the pleadings and evidence from which the court found that Mary Powell acquired both the legal and equitable title to said lot by deed from Mrs. B. A. Kimple, of date March 6, 1915; and that the evidence adduced by appellants was not sufficiently clear and convincing to establish their contention that the deed was in fact intended as a mortgage. In accordance with the findings, a decree was rendered dismissing the bill. From the decree of dismissal, an appeal was duly prosecuted to this court, and the cause is here for trial *de novo*.

It is impractical to set out the testimony in detail, so only a summary of the evidence of each witness will be attempted. Sarah Anderson, desiring to buy a home, arranged, through her husband, with B. A. Kimple to advance $145 for that purpose. The property, heretofore described, was purchased from Ruby M. Jones for that amount. Instead of making the deed directly to Sarah Anderson and taking a mortgage from her to secure the money advanced, B. A. Kimple paid Ruby Jones the money, and she executed a warranty deed on November 4, 1912, directly to Mrs. B. A. Kimple, as security for the purchase money, with the understanding that, when the money was repaid, Mrs. B. A. Kimple would

convey the property to Sarah Anderson. As evidence of the indebtedness, Sarah Anderson executed notes in the sum of $8 each, payable monthly, bearing interest at the rate of ten per cent. per annum from date until paid. Sarah Anderson paid fourteen of the notes, leaving a balance of $41 due, according to the evidence of herself and husband. According to the evidence of John Powell, the balance was $66. William and Sarah Anderson testified that John Powell agreed that if they would go to the farm with him he would pay the balance of the indebtedness for them, but, after doing so, he refused to settle with them or pay the balance they owed Mr. Kimple; that Mr. Kimple wanted his money, and John Powell agreed to advance it if they would allow him to take possession of and rent the house until repaid; that they agreed to his terms, and, pursuant thereto, he paid Mr. Kimple $41, the balance due on the notes, and, to secure himself, took a warranty deed from Mrs. B. A. Kimple to his wife, Mary Powell, on March 16, 1915, with the understanding that when the rents collected from the house equaled the amount paid, with interest, he would convey the property to Sarah; that their son, Alfonzo Anderson, remained in the house twenty months and paid John Powell $3 per month, or a total of $60, at which time he ceased paying, because John Powell refused to convey the property to his mother; whereupon John Powell put him out of possession; that they demanded a deed, but John Powell refused to make it, claiming to be the owner of the property; that John Powell has retained the possession of the property since that time.

B. A. Kimple testified that the parties came to his office to settle with him; that the only parties present, in addition to himself, were John Powell, William and Sarah Anderson; that John Powell paid him the balance due on the notes and said: ''Now, the only paper I want is you give me a deed, and when they pay it out I will give them a deed back;'' that his understanding

was that John Powell was to take a deed and hold it as security, just as he had held it.

John Powell testified that he made no agreement to pay Mr. Kimple's notes upon condition that William and Sarah Anderson would go to the farm with him; that William tried to borrow money from him and his wife to pay Mr. Kimple, but they declined to lend it; that, on the second visit, he said they were going to lose their home, and rather than let Mr. Kimple have it, they might have it if they would pay it out; that they agreed to do that, and, pursuant to the agreement, paid Mr. Kimple $66 and obtained absolute title to the property; that, at the time, Sarah Anderson surrendered her title bond to Mr. Kimple and Mr. Kimple surrendered it to him; that the deed was not intended as a mortgage to secure the money paid Mr. Kimple; that, when Sarah Anderson demanded a deed from him, he figured up the amount he had been out and proposed if she would pay him $105 he would try to get his wife to make her a deed; that she could have it for that additional amount, as far as he was concerned; that Sarah Anderson refused to pay him anything; that at the time William Anderson proposed to make them an absolute deed to the property on condition that they pay the Kimple notes, his wife, his son, Chester, and Wat Brooks were present.

His wife, Mary Powell, in the first part of her direct examination, corroborated her husband in this respect, but, later, said she authorized her husband to agree to sell the place back to them in case they repaid the $66. On her cross-examination, the following question was propounded to, and the following answer made by her:

"Q. You knew you was lending the money to him, didn't you?

"A. Yes, sir."

Chester Powell testified that he was not present when William Anderson came the second time to see his father and mother about borrowing money to pay his home out and never heard him tell them he would let them have the property if they would pay Mr. Kimple's

notes, but, that, at another time, William Anderson told·
him if John would pay the lot out, he could take it.

Wat Brooks testified that he did not hear the con-
versation between William Anderson and John Powell
and his wife; but that he told him, when John and Mary
Powell were not present, that he was down there to get
John to help him out; that Mr. Kimple was going to take
his lot and he would rather for John to have it than Mr.
Kimple.

William Anderson, in rebuttal, denied the state-
ments attributed to him by appellees and their witnesses.

Sarah Anderson was recalled, and testified that she
never authorized her husband William to give John and
Mary Powell the lot on condition they pay the Kimple
notes.

The rental value of the property ranged from $2.50
to $7 per month, in the opinion of the several witnesses
testifying upon that point.

In determining whether an instrument, absolute
upon its face, was intended by the parties as a mort-
gage, the court "will consider the circumstances of the
parties, the property conveyed, its value, the price paid
for it, defeasances, verbal or written, as well as the acts
and declarations of the parties." *Scott, White & Co.* v.
*Henry & Cunningham,* 13 Ark. 112. In the application
of this test to the evidence in a given case, it is neces-
sary to indulge the presumption that a deed is what it
purports to be on its face, and that the burden rests
upon one asserting otherwise to overcome the presump-
tion by clear, unequivocal and convincing evidence.
*Gates* v. *McPeace,* 106 Ark. 583.

Appellants were not being unduly pressed by Mr.
Kimple; at least, not to the extent of threatening fore-
closure proceedings; the property was actually occupied
by them as a home; they had paid two-thirds, or more,
of the purchase price; they were not related to, or under
any peculiar obligations to John Powell which would in-
duce them to present their equity to him. According to
the witnesses, their purpose was to save their property.

The inherent probabilities growing out of the situation of the parties, the kind of property, its value, and the inadequate consideration John Powell claims to have paid for it, are against appellee's claim that appellants gave their equity in it to him. Turning to the evidence itself in search of the weight thereof, three out of four of the witnesses present when the transaction was finally consummated testified that the deed was given as security for the money advanced by John Powell to pay Mr. Kimple's mortgage. Mr. Kimple was one of these witnesses, and the only disinterested witness present. The grantee in the deed testified that she knew she was lending the money to William Anderson. While there are conflicts in the evidence, it clearly, unequivocally and convincingly shows that the deed in question, though absolute on its face, was intended as a mortgage. Appellants have, therefore, met the burden resting upon them.

We also think it established by the weight of the evidence that appellees advanced only $41 in payment of Mrs. Kimple's notes and were fully repaid in the rents paid them by Alfonzo Anderson; that Alfonzo made the last payment of rent on November 6, 1916; that, since that time, appellees have wrongfully retained possession of the property; that the fair rental value thereof was $3 per month.

The decree is therefore reversed and the cause remanded with directions to reinstate the action, vest the title in Sarah Anderson, and render judgment in favor of appellants for $144, with interest at six per cent. for the average time, less the necessary repairs placed upon said property and the taxes paid thereon, with interest at the rate of six per cent. per annum from date of payment.