CLARK-MCWILLIAMS COAL COMPANY *v.* WARD.

Opinion delivered February 29, 1932.

*Brock & Williams* and *Cravens & Cravens,* for appellant.

*R. W. Robins* and *G. O. Patterson,* for appellee.

HART, C. J., (after stating the facts). Counsel for appellees seek to uphold the decree on the ground that the case calls for an application of the established rule in this State that a court of equity will treat a deed, absolute in form, as a mortgage whenever executed for a loan of money or as security for a debt. . The general doctrine prevails in this State that the grantor may show that a deed absolute on its face was only intended to be a security for the payment of a debt and thus is a mortgage. Since the equity upon which the court acts arises from the real character of the transaction, any evidence, written or oral, tending to show this, is admissible. If there is a debt existing with a loan of money in advance, and the conveyance was intended by the parties to secure its payment, equity will regard and treat an absolute deed as a mortgage. However, the presumption arises that the instrument is what it purports to be; and, to establish its character as a mortgage, the evidence must be clear, unequivocal, and convincing. By this is meant that the evidence tending to show that the transaction was intended as a security for debt, and thus to be a mortgage, must be sufficient to satisfy every reasonable mind without hesitation.

In the early case of *Scott* v. *Henry,* 13 Ark. 112, the court said: "And, for the purpose of ascertaining the true intention of the parties, it is a well established rule, that the courts will not be limited to the terms of the written contract, but will consider all the circumstances connected with it; such as the circumstances of the parties, the property conveyed, its value, the price paid for it, defeasances, verbal or written, as well as the acts and declarations of the parties and will decide upon the contract and the circumstances taken together." In that case, the court said that under the facts proved, although the evidence was not absolutely conclusive, still, under the uniform rules of courts of chancery, the

court must treat the contract as a mortgage. This rule has been steadily adhered to ever since and applied by the court according to the particular facts and circumstances of each case. *Wimberly* v. *Scroggins,* 128 Ark. 67, 193 S. W. 264; *Hays* v. *Emerson,* 75 Ark. 551, 87 S. W. 1027; *Rushton* v. *McIllvene,* 88 Ark. 299, 114 S. W. 709; *Gates* v. *McPeace,* 106 Ark. 583, 153 S. W. 797; *Snell* v. *White,* 132 Ark. 349, 200 S. W. 1023; and *Kerby* v. *Feild,* 183 Ark. 714, 38 S. W. (2d) 308.

However, every case must, of necessity, depend upon its peculiar circumstances. No fixed rule can be laid down by which it can be ascertained with mathematical certainty whether the proof has met the test above described. In the very nature of things, no decisive standard can be laid down to determine the sufficiency of the evidence. The reason is that the facts and circumstances stand in different relation to each other in separate cases, and what might satisfy the mind standing in a certain relation to surrounding facts and circumstances might not be clear and decisive proof in another case. Like any other fact to be proved by evidence which satisfies the mind of its truth, the proof may be inferred from the attendant circumstances and often can not be proved in another way.

In the present case, it is a significant fact that there was no contract for a sale and resale of the property. Ward was already indebted to N. R. Clark and H. G. Clark in the sum of $15,000, principal, and $900, interest, which he had secured by a mortgage on the same property, executed to them on the 31st day of March, 1928, due three years after date. As further security, he had also given them a transfer or assignment of whatever dividends or profits might be due him. There was no satisfaction of the mortgage indebtedness, and he continued to be indebted to them after the sale in so far as the written record discloses. The Clarks retained the mortgage, and never at any time offered to satisfy it. Thus, so far as the written record shows, Ward con-

tinued to be indebted to them after the conveyance to H. G. Clark and N. R. Clark on the mortgage indebtedness. Upon the payment of his mortgage indebtedness, he had a right to have the mortgage satisfied, but, until that was done, he continued to be indebted to them after the sale. *Herman* v. *May*, 40 Ark. 146; *Brewer* v. *Yancy*, 159 Ark. 256, 251 S. W. 677; and *Matthews* v. *Stevens*, 163 Ark. 157, 259 S. W. 736.

According to the testimony of Ward, there was a positive understanding between him and H. G. Clark that the deed to his interest in the mine property in the corporation and his assignment of his dividends or profits therein was merely intended to secure his indebtedness, and there was no intention that the sale should be an absolute one. It was understood at the time that there was an amount coming to him in the way of profits for the year 1929 and this amounted to more than the amount of his stock assessment in the sum of $4,500. A subsequent audit of the books showed this to be true; for in about a month after the transaction in question, H. G. Clark paid himself the sum of $5,852.83, as a dividend on Ward's interest in the corporation for the year 1929. Thus, he got $1,352.83 more out of Ward's dividend for the year 1929 than it took to pay the stock assessment of Ward in the sum of $4,500. This tended strongly to corroborate Ward in his version of the transaction. It is true that Ward had already pledged these dividends to secure the payment of his mortgage indebtedness, but the property embraced in the mortgage was ample for that purpose.

Five persons, who testified that they were familiar with the value of the coal mine in question as well as with the value of other coal mines in that vicinity, testified that the property in question was worth from $120,000 to $175,000. According to their estimate, the one-third interest of Ward was more than twice the consideration embraced in his deed to H. G. Clark. As above stated, in about a month after this, more than an amount sufficient to pay his stock assessment of $4,500

was collected as his share of the dividends in the corporation which had already been earned at the time the deed was executed on the 31st day of January, 1930. The witnesses who testified as to the value of the coal mine gave detailed information as to its location and drainage and other matters which add to its value.

It is true that H. G. Clark and N. R. Clark flatly contradict the testimony of Ward, and it is earnestly insisted that their testimony is entitled to as much credence as the testimony of Ward. Be that as it may, the testimony of Ward is strongly corroborated by the surrounding circumstances. These circumstances are stronger than the words of men and point unerringly to the fact that the transaction was intended between the parties to be a security merely for debt and not an absolute conveyance of the property.

Each side claims that it is corroborated by the testimony of Pufahl and Reynolds, but we do not consider their testimony of much value to either side. Each of them at first stated that he thought the transaction was an absolute sale, but his opinion was based upon what the parties said. They stated that later on during the conference, after Clark and Ward had retired for private conversation, they concluded that the transaction was not intended to be an absolute sale of the property. This view of the matter was merely conjecture from what they saw and heard. It is of but little value in arriving at the real intent of the parties.

The purpose of allowing oral testimony in cases of this sort is to prevent fraud and oppression in cases where the deed or other conveyance was obtained by advantage taken of the grantor in the deed. Such course is more apt to obtain the ends of justice.

No useful purpose can be served by entering into a lengthy and detailed discussion of the evidence. It is always embarrassing to judges to decide questions of fact between old friends and persons apparently of equal standing in the community, but our duty is to apply the principles of law above announced to the testimony in the

case viewed in the light of the surrounding circumstances; and, when that is done, it seems to us that the circumstances attending this transaction point unequivocally to the fact that the transaction was not intended to be an absolute sale of the property, but was to be a mortgage to secure the indebtedness owed by Ward to the Clarks.

In addition to what we have said, it may be stated that this court has uniformly held upon appeal that the findings of fact made by a chancery court will not be disturbed unless they are against the preponderance of the evidence. Here the chancery court made an' express finding in favor of Ward in the application of the well-settled rule that the testimony in his favor must be clear, unequivocal, and convincing, and we cannot say that his finding and application of the well known principles of law stated above to the facts of this case is against the weight of the evidence.

We now come to the question of excess salaries, and on this point the finding of the chancellor was again in favor of Ward. It will be noted that an accounting by the auditors showed the profits made by the partnership when it came into existence during the first part of the year 1916 on down through the year 1927. The corporation was organized in 1922. Great profits were made during all of this time, and a resolution had been entered of record when the corporation came into existence, continuing the managing officers of the coal mine at the same salary they had when it was a partnership. No good reason is shown why these officers should be so suddenly advanced in salary during the years 1929 and 1930. On the other hand, according to the testimony, the business was not so profitable during these years, and it would seem that there was every reason why the salaries of the officers and the expenses allowed them should not be increased. They had exclusive management of. the affairs of the corporation, and Ward and McWilliams knew nothing at all about it. The whole relation of the parties during the existence of the partner-

ship as well as of the corporation show that the Clarks were the actual managers, and they stood in the relation of trustees to the other stockholders. *Nedry* v. *Vaile,* 109 Ark. 584, 160 S. W. 880; and *Horner* v. *New South Oil Mill Company,* 130 Ark. 551, 197 S. W. 1163.

It was the duty of the directors to manage the corporate property for the benefit of the stockholders, just as it was the duty of the partners to manage it for the benefit of the other members of the partnership. In the performance of that duty, they were chargeable with the utmost good faith, and it was a breach of trust to the other stockholders for the managing directors to obtain an undue advantage to themselves by way of excess salaries.

Finally, it is insisted that the court erred in making Pat McWilliams a party to the suit. We do not think so. On this branch of the case but little need be said. Pat McWilliams became a party to the suit on the accounting branch of it. He immediately acted with Ward in the matter. He was entitled to an accounting of the corporate affairs just as much as Ward was entitled to it. Besides this, no prejudice could have resulted to appellants on this account. McWilliams would be concluded by the decree of the court and could maintain no subsequent suit for an accounting. Thus, it will be seen that he was a proper party if not a necessary one. He had a right to assign and transfer to Ward his part in the undivided profits of the corporation, and Ward could thus use the balance so assigned to him by McWilliams in payment of whatever indebtedness he owed the Clarks.

After a careful consideration of the whole testimony and of the arguments made by counsel in their respective briefs, we are of the opinion that the decree of the chancery court was correct, and it will therefore be affirmed.