WATSON v. CLAYTON.

4-6702                                  160 S. W. 2d 849

Opinion delivered March 30, 1942.

*Rowell, Rowell & Dickey,* for appellant.

*E. W. Brockman,* for appellee.

MEHAFFY, J. The appellant, J. B. Watson, colored, president of the A. M. & N. College, of Pine Bluff, Arkansas, learned that two colored women, Ella Clayton and Bettie Ester, were faced with the possibility of losing their home as a result of the nonpayment of state and county taxes and sewer district taxes and a certain judgment which constituted a lien against their property. Appellant caused an abstract to be prepared and examined, and advanced for the use and benefit of the colored women $618 and received from them a warranty deed, and a day or two later gave them a written instrument agreeing to reconvey said property to appellees when they had repaid the money advanced by him, plus interest. No mention was made in the written instrument as to who would pay sewer district, state and county taxes and insurance premiums during the time appellant held the title to said property and before he had been repaid.

The appellant filed suit to foreclose and alleged that after he had furnished the money, in order to protect his interest he was compelled to pay taxes and insurance premiums, and that the deed and contract should

be construed as an equitable mortgage, and that he should have judgment against the appellees for the full amount expended by him, with interest, and that said judgment be declared a first and prior lien on said real property, and if not paid within a reasonable time, a foreclosure and sale of said real property be had.

Appellees filed demurrer and answer. A memorandum written by the appellant and given to appellees was attached to and made a part of their complaint.

The appellant testified in his own behalf that he was president of A. M. & N. College, Pine Bluff, Arkansas, and resided on the campus, where he had been president thirteen years; that he knew the location of appellees' property; that a friend came to him and asked him if he would save appellees' property; that they stood the possibility of losing their property for nonpayment of a judgment and taxes; that the appellees also came to him, and he told them he would take a deed to the property from them after paying the charges against it, and would give them the right to buy it back, and when they paid him back, he would give them a deed to it; he told them to go to see his lawyers and have them check the title; he advanced the money necessary in order to clear the defects and debts against the property, and that he himself prepared the memorandum; that he paid all the taxes and intended to deed the property back to them when they repaid to him the $618 that he had paid out and the sums he subsequently paid for taxes and insurance premiums; that he paid the taxes and insurance premiums to protect his interest in the property. He had made demand on appellees several times for payment; that he put up the money to help the appellees save their property and took the title thereto merely as security for the money he was out; that appellees had always claimed that they would pay taxes and insurance, but in the long run, he had to pay it each year in order to protect the property, and finally appellees told him that they did not intend to pay the taxes and insurance until they got the mortgage paid off; that all he wanted them to do was pay back the money put up, plus ten per cent. interest, and to pay taxes and insurance.

There was introduced an affidavit in aid of title prepared by solicitors. The deed was introduced in evidence, and also the instrument given by appellant to appellees, which reads as follows:

"Pine Bluff, Arkansas,
"August 3, 1937.

"This document is to certify that I have purchased from Mrs. Ella Clayton and Mrs. Bettie Ester their home at 619 North Cedar street, Pine Bluff, Arkansas, for $618.

"I am hereby making this promise to them in writing that when they have fully repaid this $618, with interest at ten per cent. per annum, at any time before August 1, 1942, I shall resell to them this property at a price not greater than the sum of $618 plus the aforesaid interest to the date of final payment to me and give them a deed in fee simple for same. Their property was up for sale for debt and I only bought it to save the same to them.

"In case of my death or if any other circumstance should arise to incapacitate me to carry out this agreement herewith, I am asking the administrator of my estate to carry out this promise in full.

"Signed: J. B. Watson."

The appellees did not testify and after a hearing, the court found that the action was based on a written contract prepared by the appellant and delivered to the appellees, and that the appellees accepted the terms of said contract and made certain payments thereon; that the terms of the contract are definite, certain and unambiguous, and that defendants have until August 1, 1942, to pay to appellant the total sum of $618 and interest.

At the conclusion of the testimony of J. B. Watson, the appellees moved to exclude said testimony because it was offered to vary the terms of a valid written instrument. The court sustained the motion of appellees and held that said suit was prematurely brought.

The written agreement prepared and signed by the appellant expressly provides that the payment may be

made at any time before August 1, 1942. We are, therefore, of the opinion that the suit was prematurely brought, and that the right to sue will not accrue until August 1, 1942. For this reason the judgment dismissing the complaint is affirmed.

The appellees contend that there are three issues presented: First, that the writing sued on is a contract to repurchase; second, that parol evidence is not admissible to contradict, vary, or add to the terms of the contract; and third, that the action was prematurely brought.

In the first place the testimony of appellant does not contradict, vary, or add to the terms of the written contract, and his testimony was therefore admissible.

It was said in the case of *Jackson County Gin Co.* v. *McQuistion,* 177 Ark. 60, 5 S. W. 2d 729: " 'The general rule that parol evidence is not admissible to contradict or vary the terms of a written contract is neither invariable nor inflexible, but adapts itself to the manifold and shifting exigencies of human affairs. . . . The law takes into consideration the fact that most agreements are drawn up by unskilled persons, ignorant of the legal rules of construction, who very frequently do not embody the entire agreement, or else express it vaguely or ambiguously; and the fact that, even where agreements are drawn up by legal experts, the same faults and defects are attributable, sometimes from insufficient instructions from the client, sometimes from error of the counsel himself. A great deal of judicial leniency should be and is extended to uninstructed persons, where experience has demonstrated that some of the wisest lawyers who have ever lived have not known enough law to draw their own wills. . . . The body of the exceptional law that has thus sprung up is much larger than that of the corroborative law.' Browne on Parol Evidence, 2.''

The conduct on the part of the appellees themselves, together with the deed and instrument introduced, we think show conclusively that this was a debt secured by the deed and it was not intended for any other purpose,

The appellees made payments from time to time acknowledging the debt, and, therefore, contradicting the theory they now advance. The appellees cite and rely on *Mathews* v. *Stevens*, 163 Ark. 157, 259 S. W. 736. However, the late Chief Justice HART said in that case: "It is well settled in this state that whenever, at the time of a sale, a vendor is indebted to the purchaser, and continues to be indebted after the sale, with the right to call for a reconveyance upon payment of the debt, a deed absolute on its face will be considered by a court of equity as a mortgage."

It was also said in the case of *Clark-McWilliams Coal Co.* v. *Ward*, 185 Ark. 237, 47 S. W. 2d 18: "In the early case of *Scott* v. *Henry*, 13 Ark. 112, the court said: 'And, for the purpose of ascertaining the true intention of the parties, it is a well established rule, that the courts will not be limited to the terms of the written contract, but will consider all the circumstances connected with it; such as the circumstances of the parties, the property conveyed, its value, the price paid for it, defeasances, verbal or written, as well as the acts and declarations of the parties and will decide upon the contract and the circumstances taken together.' In that case, the court said that under the facts proved, although the evidence was not absolutely conclusive, still, under the uniform rules of courts of chancery, the court must treat the contract as a mortgage. This rule has been steadily adhered to ever since and applied by the court according to the particular facts and circumstances of each case. *Wimberly* v. *Scoggin*, 128 Ark. 67, 193 S. W. 264; *Hays* v. *Emerson*, 75 Ark. 551, 87 S. W. 1027; *Rushton* v. *McIllvene*, 88 Ark. 299, 114 S. W. 709; *Gates* v. *McPeace*, 106 Ark. 583, 153 S. W. 797; *Snell* v. *White*, 132 Ark. 449, 200 S. W. 1023; and *Kerby* v. *Feild*, 183 Ark. 714, 38 S. W. 2d 308."

Every circumstance in this case tends to show that the deed given by appellees to appellant was for the purpose of securing a debt and was, therefore, a mortgage. The appellees understood it that way or they would not have been making payments, and they were never deprived of possession of the property, but after

the deed was executed they still occupied it and it was their duty to pay the taxes and insurance premiums that the appellant was compelled to pay to protect his interest.

It would serve no useful purpose to review the many authorities cited by both parties. We are, therefore, of opinion that the chancellor correctly found that the suit was premature. This necessitates a remand with directions to dismiss in so far as present proceedings are concerned. We have discussed and announced the law applicable, on the theory that an additional suit may be avoided.

SMITH, J. (concurring). I concur in the view that the suit was prematurely brought and that the judgment should be reversed for that reason. But having reached that conclusion, it appears anomalous that the merits of the case should be decided, and I, therefore, concur only in the reversal. I am authorized to say that Mr. Justice HUMPHREYS is of the same opinion and, therefore, joins in this concurrence.