## HENRY TOM PATTERSON *v.* JULIA WALLS WEBSTER, AS EXECUTRIX OF THE ESTATE OF MILTON P. WALLS, DECEASED ET AL

5-5876                                    480 S.W. 2d 328

### Opinion delivered May 15, 1972
[Rehearing Denied June 19, 1972.]

*George Howard, Jr.,* for appellant.

*John B. Moore* and *Daggett & Daggett,* for appellees.

FRANK HOLT, Justice. This is an action to quiet title. Appellant sought to have the ownership of 80 acres of farmland vested in him by adverse possession, and consequently, have appellees' purported interest cancelled. The Chancellor held that appellant had not established ownership by adverse possession; that a 1932 warranty deed from appellant's grandfather to appellees' predecessor in title was absolute and not a mortgage as asserted by appellant; that appellant was a year-to-year tenant and appellees are entitled to immediate possession. The court confirmed the title in appellees and awarded them $146 for wrongful conversion of timber on the lands and $200 for the 1970 rental. Appellant brings this appeal contending for reversal that the Chancellor's holding

"that the deed executed by appellant's grandfather in the year 1932 was not a mortgage is contrary to the weight of the evidence."

Henry Patterson, appellant's grandfather, purchased the property involved in this litigation in 1893 and in 1904 he moved upon the property where he conducted farming operations until his death in 1934. Immediately thereafter his son, George Patterson, took possession of the property and farmed it until his death in 1946. Thereupon his son, appellant, occupied the farm and continued the farming operation until the present.

In 1923 a realty mortgage on 40 acres of this property was given by appellant's grandparents to James A. Walls (appellees are his heirs) as security for a $700 debt. This mortgage reflects three payments totaling $278.13 were made. In 1930 a second mortgage aginst the entire property (80 acres) was given as security for a promissory note for $1,600 to Walls by appellant's grandparents. This mortgage does not reflect that any payment was ever made. Both granted Walls the right to sell the mortgaged property at a public sale and apply the proceeds to the debt if the debts were not paid when due. Both notes were due within a year after execution.

In 1932 a Warranty Deed to the property was executed by appellant's grandparents to Walls. The deed recited: "That we, Henry Patterson and Dora Patterson, his wife, for and in consideration of the sum of Sixteen Hundred & No/100 Dollars, the amount specified in a note and mortgage dated December 8th., 1930, executed by Henry Patterson and Dora Patterson, his wife to James A. Walls, and Recorded Record Book 23, Page 372 of the Mortgage Records of Monroe County, Arkansas, together with other valuable considerations, do hereby grant, bargain, sell and convey unto the said Jas. A. Walls and unto his heirs and assigns forever the following described lands . . ." Of course, there is nothing on the face of the deed which indicates a mortgage.

In *May* v. *Alsobrook*, 221 Ark. 293, 253 S.W. 2d 29 (1952), we said:

"There is nothing in the deed itself which shows it to be in fact a mortgage. To engraft on a deed, terms, conditions or a consideration not expressed therein, the evidence must be clear, cogent and convincing (citing cases). There must be something more than a mere preponderance of the evidence (citing cases)."

See also *Baker* v. *Helms,* et ux, 244 Ark. 29, 423 S.W. 2d 540 (1968), *Landers* v. *Denton,* 213 Ark. 86, 209 S.W. 2d 300 (1948), *Fox Brothers Hardware Co.* v. *Phillips,* 210 Ark. 483, 196 S.W. 2d 754 (1946). The applicable test is expressed in *Beloate* v. *Taylor,* 202 Ark. 229, 150 S.W. 2d 730 (1941):

"In determining whether an instrument is a deed or a mortgage the test is: Did a debt exist at the time the instrument was executed, and was the instrument of conveyance intended by the parties to secure the debt. It requires clear and decisive testimony to prove that a deed absolute in form was intended as a mortgage."

In *DeLoney* v. *Dillard,* 183 Ark. 1053, 40 S.W. 2d 772 (1931), we said:

"The law presumes that a deed absolute on its face is what it appears to be, and the burden is ỏn the one claiming it to be a mortgage to overcome this presumption by clear, unequivocal and convincing evidence."

See also *Clark-McWilliams Coal Co.* v. *Ward,* 185 Ark. 237, 47 S.W. 2d 18 (1932); and *Gates* v. *McPeace,* 106 Ark. 583, 153 S.W. 797 (1913).

Appellant, Henry Tom Patterson, initiated this suit after recieving notice from appellees (the heirs of James A. Walls) to vacate the lands involved. In support of his contention that the 1932 deed was intended as nothing more than a mortgage, appellant testified that he was born on the property and had lived there for 46 years and had occupied and operated the farm since his father's

death in 1946. Prior to his father's death, he helped with the farming activities. He and his father made improvements, consisting of a farm road, addition of a room on the house, and installation of gas and electricity which were made without consulting anyone. His father had told him that note was owed on the place and that he had heard M. P. Walls (James A. Walls' son) tell his father that the note was for $1,600. It appears that James A. Walls died in 1939 and M. P. Walls managed the property for himself and the other heirs until he died in 1970, or about a year before appellant brought this action. Appellant testified that when he took over the farm, M. P. Walls told him: ". . .[n]ow H. T. he said your grandfather borrowed some money. He said you work and he said I don't want your place, he say I don't want it. He say you work and he say when you work I get my money, he says that is all I want. I will turn the land back to you. That's what Mr. Walls told me." Appellant agreed the taxes were paid by Walls and understood the taxes were added to his account. During the fall of each year, appellant paid 1/4 of the crops to Walls and understood these annual payments were to be applied to his account which included the taxes and furnishings.

On cross-examination, this witness testified that about seven or eight years ago his aunt had told him about the 1932 deed. He went with her to the courthouse to examine the deed records and only saw the mortgage; he had no reason to file a lawsuit because no one had interfered with his occupancy of the place and he filed this lawsuit when told to vacate the property following M. P. Walls death in 1970. He always paid 1/4 of his harvest each year to James A. Walls' heirs (appellees) through Milton P. Walls. This payment was not regarded as rent and was to apply on the $1,600 debt and his account. Walls never mentioned to him about paying any interest. Appellant never asked for an accounting or any balance owed during his 23 years' possession of the farm and annual payments thereon because, "he (M. P. Walls) always told me that I didn't have to worry about that that whenever I would get paid, he would put me off all the time." Appellant admitted he never saw any item for taxes on his statement nor did he ever assess the taxes. Appel-

lant's wife corroborated him and testified that they paid 1/4 of their crop or $300 to $400 each year on the indebtedness.

Appellant's aunt, Mosella Thomas, although not a party to this action, claimed an interest. She testified that seven or eight years ago, M. P. Walls had told her of the deed, and she then saw the 1932 deed at the courthouse. She wanted to do something about it at that time; however, "I wanted to do but the rest of them didn't want to do nothing." According to her, the depression years prevented her father from repaying the two loans.

The County Executive Director of the ASC office in Clarendon, Arkansas, (this office administers the U. S. Dept. of Agriculture support program) testified that originally the 80 acre tract was shown on their records as belonging to H. T. Patterson, the appellant; that sometime in the early 1950's this 80 acre tract was combined with other small tracts and placed under a new farm listing with the operation and ownership being in M. P. Walls. A clerk, in this office for 18 years, testified that office's records reflected that since 1963 the appellees were the owners of this 80 acres as part of a combination of farms. However, the office was not concerned primarily about the title to the property and accepted whatever was represented to the office. In 1966 a new program for cotton diversion acreage payment was implemented. M. P. Walls had signed the "intention to participate" as "owner" and appellant signed as "producer." In rebuttal, appellant denied having seen the ASC office records and asserted he did not authorize the removal of his name from their record nor did he authorize Walls' name to be placed on the records. Also, he understood that 1/4 of the "government money" which Walls received was to apply to his grandfather's 1932 indebtedness. Appellant received 3/4 of the "government money" as a producer. On re-cross he admitted signing the ASC papers in M. P. Walls' store without first reading them. Appellees adduced other evidence of acts of ownership of this 80 acres. These acts consisted of executing and recording oil and gas leases, payment of inheritance taxes following the death of James A. Walls in 1939 and the probate of his will devising this

80 acres to appellees, and, also, that appellant was regarded as a tenant.

As we view the evidence, we agree with the Chancellor that the evidence fails to show by the required heavy quantum of proof that the 1932 deed from appellant's grandfather to Walls (appellees predecessor in title) was by an agreement intended by the parties as a mortgage and not as an absolute deed as it clearly purports to be on its face.

Affirmed.