WIMBERLY *v.* SCOGGIN, RECEIVER.

Opinion delivered March 12, 1917.

1. DEED—DEED AS MORTGAGE—PROOF.—Equity will permit the introduction of parol evidence to show that a deed, absolute on its face, was in fact intended as a mortgage; but to establish this fact, the evidence must be clear, unequivocal and convincing.

2. CONTRACTS—PROOF OF INTENTION—WHAT MAY BE CONSIDERED.— In order to ascertain the intention of the parties to a contract, courts will consider, besides its written terms, all the circumstances connected with it, such as the circumstances of the parties, the property conveyed, its value, the price paid for it, defeasances verbal or written, as well as the acts and declarations of the parties, and will decide upon the circumstances and the contract taken together.

3. DEEDS—DEED AS MORTGAGE—CONSIDERATION.—Adequacy of the consideration is a circumstance to be considered in determining the question whether the transaction was a sale or a mortgage.

4. DEEDS—DEED AS MORTGAGE.—Under the evidence, *held*, a deed, executed by appellant, was, in fact, intended by the parties to operate as a mortgage.

5. USURY—LOAN OF MONEY.—Under the evidence, *held*, a loan of money from one M. to appellant was usurious and was uncollectible in the hands of the receiver of a corporation to whom M. had assigned the note.

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Riddick & Dobyns,* for T. C. and Jennie Wimberly, appellants.

1. The deed to Morgan was only a mortgage to secure a debt for money borrowed. The loan was usurious and the notes void, even in the hands of an innocent purchaser. 47 Ark. 288; 36 *Id.* 248; 46 *Id.* 50; 53 *Id.* 454; 41 *Id.* 331.

2. Goodbar & Co. had no lien. 40 Ark. 146; 58 *Id.* 252.

*W. H. Pemberton,* for Goodbar & Co., appellants.

1. The instrument was a deed and not a mortgage. Goodbar & Co.'s attachment created a lien on the land. The finding of the chancellor was not in line with the law as laid down by our Supreme Court. The burden was on Wimberly and the proof must be clear, satisfactory and

convincing. 101 Ark. 611; 165 S. W. 273; 31 *Id.* 163; 78 *Id.* 527; 88 *Id.* 301; *Ib.* 336; *Ib.* 363; 106 *Id.* 166; *Ib.* 583; 109 *Id.* 335; 19 *Id.* 298; 40 *Id.* 140.

2. Wimberly can not claim he signed the deed by mistake. 71 Ark. 185; 105 *Id.* 40; 109 *Id.* 542; 119 *Id.* 553.

*Minor Pipkin* and *Hal L. Norwood,* for appellees.

1. The testimony is not clear and convincing that the deed was intended as a mortgage. 101 Ark. 611; 75 *Id.* 551; 8 *Id.* 336; *Ib.* 229; 78 *Id.* 527.

2. The contract was not usurious. But, if so, there was nothing to put Scoggin on notice. 27 Cyc. 1024.

*Riddick & Dobyns,* in reply.

1. The proof is clear and convincing that the deed was intended as a mortgage. 13 Ark. 112; 15 *Id.* 280. If there was a doubt, the court should construe the instrument to be a mortgage.

2. The loan was usurious, and the instrument void, even in the hands of an innocent purchaser. Kirby's Digest, § 5390; 41 Ark. 331, 340; 54 *Id.* 572; 39 *Cyc.* 1690-1; 23 Pac. 462.

HART, J. The American Freehold Land Mortgage Company of London, Limited, instituted this action in the chancery court against T. C. Wimberly and Jennie Wimberly, his wife, to recover judgment for the balance alleged to be due them and to foreclose a mortgage on land given to secure the debt.

A. H. Scoggin, receiver of the Egleton Lumber Company, intervened in the action and set up that he sold Ezra J. Morgan some of the assets of the lumber company, and on May 21, 1913, received certain notes executed by Thomas C. Wimberly to E. J. Morgan as collateral security therefor. He alleged that Wimberly sold the land to Morgan, and that there was a resale of the land by Morgan to Wimberly, and that the notes were given by Wimberly to Morgan as part of the purchase money of the land. He prayed that he be permitted to pay whatever judgment that might be rendered in favor of the mort-

gage company, and that he be subrogated to all the rights of the mortgage company, and that he have an enforcement of the lien of Morgan against Wimberly on the purchase money notes given by the latter to the former.

Goodbar & Co. also filed an intervention in the action. It stated that on May 27, 1914, it filed suit in the Pulaski Circuit Court against Ezra J. Morgan, and obtained a writ of attachment which was levied upon the lands involved in this suit; that on October 21, 1914, judgment was rendered in its favor against Morgan in the sum of $471.53. The hearing of the attachment branch of the case was continued to November 3, 1914, at which time the attachment was sustained by the court, and it was ordered that the lien of said attachment take effect from and after date of the issuance and levy on May 27, 1914. The prayer of the complaint was that it should be declared a superior lien to that of A. H. Scoggin, receiver, etc., and that its lien be declared second only to that of the mortgage company.

The defendants, T. C. Wimberly and Jennie Wimberly, filed an answer in which they admitted the debt to the mortgage company, and that its mortgage was a valid lien on their land. They denied, however, that the land had been sold by them to Ezra J. Morgan, and set up that the deed to him, though absolute in form, was only intended to secure a loan of money made by Morgan to Wimberly. They also pleaded that the mortgage debt to Morgan was usurious and void. They prayed that the interventions of Scoggin, as receiver, and of Goodbar & Co., be dismissed; that the notes executed by Wimberly to Morgan be cancelled and the transaction between them be declared a mortgage.

The court found that Wimberly owed the mortgage company the sum of $879.45 with interest from July 1, 1916, until paid at the rate of 10 per cent. per annum, and the mortgage on the land was ordered foreclosed. The court also found that the deed executed by Wimberly and wife to Morgan and the contract of sale from Morgan back to Wimberly was only a mortgage to secure the amount

of money loaned Wimberly by Morgan. The court further found that Morgan transferred to Scoggin, as receiver, the notes of Wimberly to secure the payment of an amount due by Morgan to the receiver. The court further found that Morgan never paid off the plaintiff's mortgage as he agreed to do and that the sum of $877.45 should be deducted from the amount of the notes of Wimberly held by Scoggin, as receiver. It was decreed that Scoggin, as receiver, should recover from Wimberly the sum of $1,611.77 with interest from that date at 10 per cent. per annum, and that there should be a lien upon the lands involved in this suit to secure the payment thereof subject to the debt of the mortgage company.

The cross-complaint of Goodbar & Co. was dismissed for want of equity. The defendants, T. C. Wimberly and Jennie Wimberly and Goodbar & Co. have appealed. The material facts are as follows:

T. C. Wimberly is a colored man, and in 1901 owned eighty acres of land on the Arkansas River, in Pulaski County, not far from Little Rock. On the 20th of March, 1901, he mortgaged his land to the American Freehold Land Mortgage Company of London, Limited, for $1,304, to be paid in yearly payments of $100 each. He kept up his payments for several years, but finally got behind. In February, 1912, he owed the mortgage company $839.77, which he was unable to pay, and the mortgage company threatened him with foreclosure proceedings. There was also a judgment against him in the Pulaski Chancery Court in the sum of $544.10, and there were levee taxes due on the lands to the amount of $183. Being unable to pay these amounts, on the 26th day of February, 1912, Wimberly went to the office of Walter J. Terry in Little Rock, to seek his assistance in borrowing money to meet these obligations, and also an additional amount of $100 with which to make a crop. Terry had been the attorney of Wimberly in the past, and was also the attorney for the Southwestern Telephone & Telegraph Company. This company had just purchased the telephone lines of another company, and Ezra J. Morgan had received as com-

missions for making the sale, between fifty and sixty thousand dollars. He came into Terry's office while Wimberly was there. Terry suggested that Morgan might lend Wimberly sufficient money with which to meet his obligations. The result of the transaction was that Wimberly and wife executed a deed to Morgan to the eighty acres of land above referred to, and Morgan advanced him $835 in money. A written contract was then entered into between them, whereby Morgan agreed to convey the land back to Wimberly in consideration that Wimberly should execute to him one note for $335 due and payable December 1, 1912, with interest at the rate of 10 per cent. per annum from date until paid, and eleven notes for $270 each, one due every year for the eleven years. These notes were to bear interest at the rate of 10 per cent. per annum from maturity until paid.

W. J. Terry testified that he had known Wimberly for twenty years, and that he was a reliable old negro; that he had assisted him in looking after his business; that the mortgage company was threatening foreclosure proceedings; that he remembers the transaction between Morgan and Wimberly; that the reason he remembers it so well is that his telephone company had purchased property from another telephone company by which Morgan had made fifty or sixty thousand dollars in procuring the sale; that it was explained to Morgan that Wimberly would need $1,674.79, which included the debt due by Wimberly to the mortgage company; that Morgan agreed to pay off the debt of the mortgage company and also to advance Wimberly the amount necessary to pay off the judgment against him, the levee taxes, and one hundred dollars with which to make a crop; that the amount so advanced was $835; that to secure Morgan, it was agreed that Wimberly and his wife should deed to Morgan the eighty acres of land in controversy, and that at the same time Morgan should enter into a written contract of sale with Wimberly, whereby he agreed to convey the land back to him upon the repayment of the money loaned by him to Wimberly, and of the amount which he should pay

to the mortgage company to secure the release of the mortgage which it held on the land; that he, Terry, did not have time to draw up the instruments of writing necessary to carry out the agreement of the parties, and that his partner, John P. Streepey, was called in, and the agreement was stated to him. Streepey prepared the deed from Wimberly and wife to Morgan, and the contract of re-sale from Morgan to Wimberly. He said it was the intention to calculate in advance the interest which would become due on all the notes, and add it to the principal, and for this reason the notes should only bear interest after maturity.

Streepey testified that he prepared the papers according to directions, and stated that his understanding was that the transaction was intended to be a loan from Morgan to Wimberly.

Wimberly testified in his own behalf, and in all respects corroborated the testimony of Terry. He further stated that he paid the $335 note and the accrued interest to Morgan at the time it became due, and that he paid two of the $270 notes about the time they became due; that he thought that Morgan had paid off his debt to the mortgage company until about two years afterward; that when he found out Morgan had not done this, he filed his contract for record on July 2, 1914; that his land was worth $5,000, and that he had been offered $4,000 for it a good many times. The record shows that Wimberly received $835 from Morgan, and that Morgan did not pay off Wimberly's debt to the mortgage company.

Morgan testified that he bought the land from Wimberly subject to the mortgage on it, and that he paid him therefor $835. He stated that nothing was said about a re-sale until after he had purchased the land from Wimberly; that the question of re-sale came up then, and he agreed to sell it back to him for the amount stated in the written contract. His testimony flatly contradicted the testimony of the witnesses for Wimberly.

(1) While a deed absolute on its face is presumed to be an absolute deed, equity will permit parol evidence

to be introduced to show that it was intended as a mortgage; but to overcome the presumption of law, and establish the character of a mortgage, the evidence must be clear, unequivocal and convincing. *Hays* v. *Emerson,* 75 Ark. 551; *Rushton* v. *McIllvene,* 88 Ark. 299, and *Gates* v. *McPeace,* 106 Ark. 583.

Tested by this rule, the finding of the chancellor that the deed of Morgan to Wimberly was intended as a mortgage, and not as an absolute conveyance, is sustained by the evidence. It is true that according to the testimony of Morgan himself, the transaction was an absolute sale, but Morgan is flatly contradicted, both by Terry and Wimberly, as well as from circumstances in the case. It is pointed out that there are some inconsistencies in the testimony of Streepey. These alleged inconsistencies are clearly shown to have been due to the witness not having a clear recollection of the matter when he first testified. His testimony was taken several years after the transaction occurred, and when he refreshed his memory by looking over some letters and other files in his office, his testimony is consistent in itself and tends to corroborate the testimony of Terry and Wimberly.

All that Morgan ever gave Wimberly was $835, and that was paid out by Streepey as follows: $544 was applied to cover a judgment against Wimberly in the circuit court; $4.50 to cover abstract expenses; $183 for delinquent levee taxes; $63.40 paid to Wimberly in cash and $40 of it was paid to Terry's firm for their services. Morgan never did pay off the debt to the mortgage company.

(2) For the purpose of ascertaining the true intention of the parties, it is a well established rule, that courts will not be limited to the terms of the written contract, but will consider all the circumstances connected with it; such as circumstances of the parties, the property conveyed, its value, the price paid for it, defeasances verbal or written, as well as the acts and declarations of the parties, and will decide upon the contract and the circumstances taken together. *Scott* v. *Henry,* 13 Ark. 112.

(3) In a case note to 20 A. & E. Ann. Cas., at page

1199, numerous decisions are cited to the effect that the adequacy of the price has been recognized as a circumstance to be considered in determining the question whether the transaction was a sale or a mortgage. Several decisions there are also cited to the effect that gross inadequacy of price is given great weight in determining the question whether the transaction was intended as a sale or a mortgage.

(4)   According to the testimony of Wimberly, himself, his land was worth $5,000, and he had been offered $4,000 for it a number of times. No attempt was made to contradict his testimony in this respect. The fact is undisputed that he went to the office of Terry, who had been in the habit of attending to his business for him, for the purpose of borrowing money to pay off the mortgage on his land, as well as to pay his other debts. He resided on the land, and it was not subject to the payment of any of his debts without his consent, except the debt of the mortgage company. His land could only have been sold for the purpose of paying that debt. It is true he wished to pay his other debts, but his land could not have been sold against his will for the purpose. Indeed, the whole amount of his debts was only about one-third of the value of his land. He readily entered into the agreement with Morgan without making any further attempt to borrow money. Therefore, under all the facts and circumstances introduced in evidence, we think, as above stated, the chancellor was right in holding the transaction to be a mortgage, and not an absolute sale of the land.

(5)   We think, however, the chancellor erred in not sustaining Wimberly's plea of usury. The total principal which Morgan agreed to lend Wimberly was $1,674.79. $835 of this was furnished in cash, and the balance was to be paid toward the satisfaction of the debt of the mortgage company. Wimberly executed to Morgan one note dated February 27, 1912, and payable December 1, 1912, with interest at 10 per cent. per annum from date until paid, and eleven notes for $270 each, dated on the same day, and one payable on the 1st of December of each year

for eleven years, with interest from maturity. It is perfectly evident that this amounted to more than 10 per cent. interest on the amount of money which Morgan agreed to furnish Wimberly. According to the testimony of the witnesses for Wimberly, it was Morgan's intention to do this, and Morgan prepared the amount and number of notes which were recited in the contract. The notes and contract, being usurious, were void in the hands of Scoggin, as receiver. *German Bank* v. *Deshon,* 41 Ark. 331.

Moreover, the notes which Wimberly executed to Morgan, referred to there being a series of notes mentioned in the contract of the same date. They thereby became a part of the contract itself, and inasmuch as we have held the transaction to be a mortgage, the notes would be subject to the same defenses in the hands of Scoggin that they would have been in the hands of Morgan. Morgan only advanced $835 on the transaction. The proof shows that $40 of this was paid to Terry's firm for legal services by agreement, and this left $795, which went into the hands of Wimberly. Wimberly paid to Morgan the $335 note with accrued interest when it was due, and two of the $270 notes about the time they became due. So that it will be seen that he paid back to Morgan more than he received from him with interest on the same.

Having held that the transaction between Wimberly and Morgan was a mortgage, and not an absolute sale, it follows that the land did not belong to Morgan, and that Goodbar & Co. did not acquire any lien on the land by virtue of its attachment.

It follows that the chancellor erred in not sustaining Wimberly's plea of usury, and in rendering judgment in favor of Scoggin, as receiver, against Wimberly. The decree, will, therefore, be reversed, and the cause remanded for further proceedings in accordance with this opinion.