## HENRY *v*. HENRY.

### Opinion delivered May 3, 1920.

1. MORTGAGES—PRESUMPTION AS TO CHARACTER OF INSTRUMENT.— A conveyance absolute in form is presumed to be a deed, and to overcome the presumption, in the absence of fraud, the evidence must be clear, unequivocal and convincing.

2. MORTGAGES—DEED ABSOLUTE IN FORM NOT A MORTGAGE WHEN.— Where plaintiff, his brother and another owned undivided interests in lands, and plaintiff conveyed his interest to his brother for a sum named, and took a written agreement that should plaintiff be able within a stipulated time to sell his interest for an amount in excess of that paid he should have the excess, and plaintiff failed to effect a sale within the time specified, the conveyance was an absolute deed with a right of resale, and not a mortgage.

Appeal from Ouachita Chancery Court; *J. M. Barker,* Chancellor; affirmed.

### STATEMENT OF FACTS.

Appellants, W. H. Henry and his wife, brought this suit on July 16, 1918, against the widow and heirs of J. T. Henry, and alleged that a deed executed by the plaintiffs on February 14, 1912, to J. T. Henry for a recited consideration of $9,100 was intended simply to secure the payment of that sum of money, and was not intended as an absolute conveyance. There was an offer to pay any sum found due under this alleged mortgage, and a prayer for its cancellation.

J. T. Henry and W. H. Henry were brothers, and, in conjunction with their brother-in-law, W. J. Proctor, bought a large body of land. Their purchase was made in 1897, and they paid at the time fifty cents per acre. W. H. Henry became indebted both to his brother and to the Ouachita Valley Bank, and was unable to pay either. The debt to J. T. Henry was for $4,000, with accrued interest for four years, and was secured by a first mortgage on W. H. Henry's undivided third interest in the land. W. H. Henry owed the bank an unsecured sum of money in addition to the sum of $3,500, which was secured by a second mortgage on the undivided interest of W. H. Henry. The bank was demanding payment of the money due it, and W. H. Henry was unable to respond to the demand. J. T. Henry furnished his brother the sum of $9,100, including the sum due himself, and took the deed here sought to be canceled, and the question is whether that deed was intended as a mere security for a loan.

W. H. Henry testified that his brother told him, the day before the execution of the deed, that he thought he could arrange the matter with the bank, and, if not, he would pay the bank and hold the lands and, when they were sold, W. H. Henry could pay what he owed him, with the interest, and get the advantage of any excess.

J. T. Henry wrote out and gave to his brother the following agreement:

"Be it known, that I, J. T. Henry, of Bentonville, Arkansas, entered into an agreement with W. H. Henry, of Bearden, Arkansas, in order to settle deed of trust held by me on said deed of trust amounting to $5,600 up to February 5, 1912, and also second deed of trust held by Ouachita Valley Bank on his one-third interest on what is known as the Henry & Proctor pasture, consisting of 5,040 acres, for which I paid the said Ouachita Valley Bank $3,500, making in the aggregate $9,100. Now, the said W. H. Henry, feeling that the said one-third interest would bring more than the said $9,100 if he had more time to put it on the market.

"To satisfy him that I did not wish to make any speculation on his misfortune, but desired to aid him in all manner to obtain its full value, we agreed that if he should get sale for said pasture any time up to January 1, 1916, for more than said $9,100, with accrued interest at 10 per cent. per annum, together with all taxes paid by me, I do by these presents agree, after deducting from the amount of sale the $9,100 with accrued interest and taxes, to pay to the said W. H. Henry the residue, if any there be, after said sale.

"In the event sale is not made by said specified time, then this instrument is void.

"Given under my hand and seal, this March 20, 1912.
"J. T. Henry."

This agreement was written by J. T. Henry, and accepted by W. H. Henry, as embodying the understanding existing between the brothers at the time the deed was executed.

W. H. Henry testified that more than once he talked with his brother about the lands, but was told he need not worry about the time. He also testified that he listed the lands for sale with one McLeod, a real estate agent, with authority to sell at $12.50 per acre, but that J. T. Henry was unwilling to sell at that price. McLeod testified that he could have made a sale at that price had he been permitted to do so. W. H. Henry testified that in the fall of 1913 or 1914 he had an opportunity to sell the

lands at $10 per acre, but his brother was not willing to sell for that price.

Mr. T. J. Gaughan testified that he offered, and would have paid, $7.50 per acre for the lands at the time the deed was made; but he made no offer, and did not desire, to buy an undivided interest. As there were 5,040 acres in the tract, the Gaughan offer amounted to $37,-800, one-third of which is, of course, $12,600 or $3,500 more than the consideration recited in the deed. It is shown, however, that J. T. Henry replied to this offer by saying, "Tom, if you think the lands are worth more than I am giving my brother for them, you buy his interest, as we had as soon have you for a partner as any one we know." No one says that Mr. Gaughan had been asked, or had proposed, to make a loan on these lands, and J. T. Henry's proposition to Gaughan would, therefore, indicate that he regarded the transaction about to be consummated as a sale.

Upon closing the deal, J. T. Henry told his brother that when he got back home he would send him a writing giving an option for three or four years to repurchase the land, and on his way home he told his nephew that he had taken over his brother's land, and at the same time he told Mr. Proctor, the owner of the other third interest, that he had purchased his brother's interest in the land. And Mr. Proctor also testified that W. H. Henry told him at the time he had sold his interest to his brother.

J. T. Henry lived for six years after taking this deed, which was two years after the expiration of the option, and it does not appear that during these last two years of J. T. Henry's life anything was ever said about reselling the land, and J. T. Henry no doubt died in the belief that the matter was a closed incident. It was also shown that at the time the deed was made McLeod had the agency to sell an adjoining tract of similar land containing 1,700 acres at four to four dollars and a half per acre, and was unable to make the sale.

The court dismissed the complaint for the want of equity, and this appeal is from that decree. Other facts will be stated in the opinion.

*Powell & Smead* and *Gaughan & Sifford.*

The instrument was a mortgage and there was a debt to be secured. 12 How. (U. S.) 139. W. H. Henry had the right to redeem. 103 Ark. 485; 25 *Id.* 138; 95 *Id.* 529; 91 *Id.* 139. The instrument was a mortgage. 38 Ark. 212; 88 *Id.* 301; 136 *Id.* 140.

*J. W. Warren* and *W. D. Brouse,* for appellees.

The transaction was construed by the parties as a sale, and so intended, and the intention should govern. The consideration was adequate to sustain a sale and there was never an opportunity to sell prior to January 1, 1916. 27 Cyc. 1004 (6); *Ib.* 1003 (C) (5); 1 L. R. A. 240, note. A mortgage is a security for a debt. The true test as to whether an instrument is a mortgage or conditional sale is laid down in 19 R. C. L., p. 266, § 35, note; L. R. A. 1916 B 132. If the relation of debtor and creditor is not subsisting, then it is not a mortgage but a sale and contract of purchase. 75 Ark. 551; 88 *Id.* 301; 105 *Id.* 314; 106 *Id.* 587; 109 *Id.* 335; 3 Pom., Eq., § 1195; 1 Jones on Mort., §§ 260-5; 8 So. Rep. 857; 41 Cal. 22; 75 Ark. 551; 161 Pac. 90; 29 Idaho 576; 114 N. E. 911; 276 Ill. 397. See, also, 3 Ark. 364; 5 *Id.* 321-337; 27 Cyc. 1011, note; 8 Paige (N. Y.) 243; 1 L. R. A. 240, note; 3 Pom., Eq. Jur. (3 ed.), § 1196; 114 S. W. 709; 88 Ark. 709; 132 Ark. 354; 27 Cyc. 1000. A deed is presumed to be what it purports to be on its face and the burden of showing otherwise is on the attacking party. 88 Ark. 301; 105 *Id.* 314; 106 *Id.* 687; 132 *Id.* 349.

If limitation does not apply, the doctrine of *laches* does. 2 Ark. 101; 81 *Id.* 352, 432; 90 *Id.* 430; 93 *Id.* 292; 95 *Id.* 6; 99 *Id.* 457; 120 *Id.* 251; 200 S. W. 1023; 53 Ark. 358; 18 Cyc. 298-299; 40 *Id.* 1751.

The demurrer of the heirs of J. T. Henry should have been sustained, but appellants have not discharged

the burden of proving their case nor is there sufficient testimony to warrant a reversal.

SMITH, J. (after stating the facts). The instrument was in the form of a deed; and we think was not in fact a mortgage. It secured no debt, and was not intended to do so. No relation of debtor and creditor subsisted, and it is manifest that W. H. Henry did not at any time regard himself as under obligation to repay J. T. Henry any part of the $9,100. The writing given by J. T. Henry to his brother, set out above, which, practically speaking, was a contemporaneous writing, shows that the transaction was a completed sale, subject only to the condition recited in the writing set out above. The title fully passed by the deed, but there was an agreement that, within the time limited, W. H. Henry should have the privilege of reselling the interest previously conveyed. J. T. Henry did not agree to sell his own interest, and there is no showing that any one ever offered to buy the undivided interest. W. H. Henry testified that his brother told him he had turned the management of the lands over to his son, Dr. Hugh Henry, and Dr. Henry testified that he told McLeod that the owners of the land would sell the whole interest and would take $12 per acre for it, but that he never heard anything further from McLeod, and neither McLeod nor his uncle ever produced a purchaser for the land at any price.

The rule is well settled that a conveyance absolute in form is presumed to be a deed, and to overcome this presumption in the absence of fraud, the evidence must be clear, unequivocal and convincing. *Snell* v. *White,* 132 Ark. 349. The testimony here establishes nothing more than a right to resell under the conditions stated. *Hays* v. *Emerson,* 75 Ark. 551. And the condition, upon which it was subject to be defeated, was never met, and we must, therefore, affirm the decree of the court dismissing the complaint for the want of equity. It is so ordered.