LEWIS *v.* MILLER.

5-992                                                   291 S. W. 2d 255

Opinion delivered June 11, 1956.

[Rehearing denied July 2, 1956.]

*Carlos B. Hill,* for appellant.

*Jameson & Jameson,* for appellee.

SAM ROBINSON, Associate Justice.   The issue here is whether an instrument which, on its face, purports to be a deed, is in fact a mortgage.   Appellees, I. O. Miller and Helen M. Miller, own a home in Fayetteville which was mortgaged to a building and loan association.   In 1941, the mortgage was foreclosed and the property sold at the foreclosure sale to a Mr. Parks.   H. O. Davis was a friend and neighbor of the Millers; after having seen an account of the sale in a local newspaper, he called on the Millers and offered his assistance in saving their home for them; of course, this was agreeable to the Millers.   Davis, for the consideration of $1,670.00, obtained a deed to the property from Mr. Parks.   Davis then agreed with the Millers that he would convey the property to them upon being reimbursed for all he had spent on it, plus 6.7% interest.   It appears that the value of the property at the time Davis received the deed from Parks was about $6,000.00.   There is evidence that in 1955 the property was worth $11,500.00.

In 1942, Mrs. Miller learned that Davis wanted to get his money out of the property.   She contacted her friend, the appellant, Mrs. Jessie A. Lewis, who agreed to come to the aid of the Millers.   The transaction was handled in this manner: Mrs. Lewis put up $2,200.00 to pay Davis, plus $25.00 for the examination of the abstract of title.   Davis conveyed the property to the Millers, and they, in turn, gave to Mr. and Mrs. Lewis what appears, on its face, to be a warranty deed to the property.   Mr. Miller and Mrs. Lewis then executed what is designated as a lease agreement, which provides that the property is leased to Miller for the term of two years, at a monthly rental of $25.00, the first payment being due on or before July 1, 1942.   The lease agreement further provides that for the additional consideration of $1.00 and the prompt payment of the monthly rental and $2,225.00 plus interest at 6.7% per annum from July 1, 1942, in addition to any amount spent by Mrs. Lewis for taxes, repairs, improvements, interest, together with any

other expenditures which she may have made on the property, she would re-convey the property to the Millers at any time within the two year lease period. The monthly rent payments were to be credited against the indebtedness. The Millers claim that in 1944, before the expiration of the lease agreement, they wrote a letter to Mrs. Lewis exercising their option to purchase, and asked for a statement of the account, but that the letter was not answered. The Millers continued to pay the rent until 1952; in November 1953, I. O. Miller wrote to Mrs. Lewis, asking for a statement of the account, and indicated his intention to exercise his right to re-purchase. It appears that Miller was unable to get a statement of the account from Mrs. Lewis, and he, therefore, filed this suit in August 1954. The Chancellor held that the deed from the Millers to the Lewises, along with the lease agreement is, in fact, a mortgage. The Lewises have appealed.

There is only one issue, and that is, whether the so-called deed to the Lewises is, in fact a mortgage. In order to show that an instrument which, on its face, appears to be a deed is, in fact, a mortgage, the evidence must be clear, concise and convincing.

The court said, in *Buffalo Stave & Lumber Company* v. *Rice,* 187 Ark. 731, 62 S. W. 2d 2: "It is likewise the rule that, where a deed purports on its face to convey the absolute title, and where the contention is made that it was in fact intended as a mortgage, the evidence to support that contention must be clear, unequivocal and decisive. *Henry* v. *Henry,* 143 Ark. 607, 221 S. W. 481. In the case cited, and in all other authorities dealing with the subject, in determining whether a deed absolute on its face is such, indeed or only to be considered as a mortgage, the real question for the court's determination is what was the intention of the parties at the time; and where such deed is accompanied by an agreement to reconvey upon certain conditions, it is proper to construe the agreement and the deed together to determine whether that agreement was conditional sale or whether it should be deemed to be a mortgage when the transaction is considered as a whole. But the

court, in determining the question, is not limited to the determination from the instruments alone, but from these and whatever extrinsic facts or circumstances are disclosed by the evidence. In reviewing the decisions of courts of chancery on questions of this character, great weight should be given to the opinion of the court as the presiding judge may be fully apprized of the existence of circumstances which but dimly appear to us from an examination of the record.''

The evidence here is completely convincing that the parties intended the transaction to be a mortgage. In the first place, in an effort to save her home, Mrs. Miller contacted Mrs. Lewis, seeking aid. It does not appear that Mrs. Lewis was in the market buying property, or had any thought of buying this particular property at the time, but merely wanted to help the Millers save their home. The property was actually worth around $6,000.00, and Mrs. Lewis paid out only $2,225.00 at the time of the transaction; it is not likely that the Millers, who had title to the property at the time, would have conveyed the property to Mrs. Lewis at such a low figure on a straight-out sale. There is other testimony from which there are strong inferences that the transaction was merely a loan made by Mrs. Lewis to help the Millers save their home, but we need look no farther than the testimony of Mrs. Lewis herself. Following are extracts from her testimony:

"Q. And how did you arrive at the figure $2,225.00 plus 6.7 interest?

"A. I didn't. That was the Miller—Davis came over with that. That's what Mr. Davis had in it and Mr. Miller said, 'we'll pay you 6.7 interest just the same as we have paid Davis.'

"Q. Well, then, in other words, they wanted you to hold the place in trust for them?

"A. No, just hold the place while they paid it out.

"Q. Just to hold the place while they paid it out?

"A. Yes, there was never any trust mentioned.

"Q. Well, you bought it with that intent?

"A. Yes, I bought it with that intent; if they paid it; that's what I told them, if they didn't pay it I intended to take it.

"Q. Now, can you explain why you provided in your lease agreement, as and when and if they exercised their option to re-purchase the place according to the instrument, that they would have to re-imburse you for the amount that you had paid H. O. Davis with interest, plus taxes, special assessments and insurance premiums, why did you want them to pay the taxes, insurance premiums, special assessments?

"A. Oh, my goodness, I didn't want to buy the place and then keep it up.

"Q. Now, then, according to this instrument it provides when the Millers exercise this option that they would have to' reimburse you for these expenditures?

"A. Well, I should think so, less the payments that they had made.

"Q. Now why did you want them to re-imburse you for those expenditures?

"A. Well, you see, if I was giving them credit each month, on that, naturally I'd put my expenses and give them credit for what had been paid out, and whatever was left over went on the principal.

"Q. The principal of the debt?

"A. Yes."

In *Clark-McWilliams Coal Co.* v. *Ward*, 185 Ark. 237, 47 S. W. 2d 18, the court said: "The general doctrine prevails in this State that the grantor may show that a deed absolute on its face was only intended to be a security for the payment of a debt and thus is a mortgage . . . In the early case of *Scott* v. *Henry*, 13 Ark. 112, the court said: 'And, for the purpose of ascertaining the true intention of the parties, it is a well established rule that the courts will not be limited to the terms of the written contract, but will consider all the

circumstances connected with it; such as the circumstances of the parties, the property conveyed, its value, the price paid for it, defeasances, verbal or written, as well as the acts and declarations of the parties and will decide upon the contract and the circumstances taken together.' In that case, the court said that under the facts proved, although the evidence was not absolutely conclusive, still, under the uniform rules of courts of chancery, the court must treat the contract as a mortgage. This rule has been steadily adhered to ever since and applied by the court according to the particular facts and circumstances of each case. *Wimberly* v. *Scroggins,* 128 Ark. 67, 193 S. W. 264; *Hays* v. *Emerson,* 75 Ark. 551, 87 S. W. 1027; *Rushton* v. *McIllvene,* 88 Ark. 299, 114 S. W. 709; *Gates* v. *McPeace,* 106 Ark. 583, 153 S. W. 797; *Snell* v. *White,* 132 Ark. 349, 200 S. W. 1023; and *Kerby* v. *Feild,* 183 Ark. 714, 38 S. W. 2d 308.

"However, every case must, of necessity, depend upon its peculiar circumstances. No fixed rule can be laid down by which it can be ascertained with mathematical certainty whether the proof has met the test above described. In the very nature of things, no decisive standard can be laid down to determine the sufficiency of the evidence. The reason is that the facts and circumstances stand in different relation to each other in separate cases, and what might satisfy the mind standing in a certain relation to surrounding facts and circumstances might not be clear and decisive proof in another case. Like any other fact to be proved by evidence which satisfies the mind of its truth, the proof may be inferred from the attendant circumstances and often cannot be proved in another way."

Affirmed.