In re ALL AMERICAN HOLDING CORP., Debtor.

ATLAS MOTOR INNS, INC., a Virginia Corporation, Plaintiff,

v.

ALL AMERICAN HOLDING CORP., a New York Corporation and Nordic American Banking Corporation, Defendants.

Bankruptcy No. 80–01278–BKC–TCB.
Adv. Nos. 80–0294–BKC–JAG–A,
80–0295–BKC–JAG–A.

United States Bankruptcy Court,
S. D. Florida.

Jan. 14, 1981.

Brown, Malman & Salmon, Miami, Fla., for plaintiff.

Britton, Cohen, Kaufman, Benson & Schantz, Miami, Fla., for debtor/defendant.

Lapidus & Stettin, P. A., Miami, Fla., Zalkin, Rodin & Goodman, New York City, for Nordic American Banking Corp.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

These companion adversaries were tried together before the court on November 20, December 3, and December 10, 1980 at which times evidence consisting of extensive testimony and voluminous documents was presented to the court.

In Adversary Case No. 80–0295–BKC–JAG–A, the plaintiff seeks to have this court eject the defendant from possession of certain property known as the St. Thomas Sheraton Hotel and Marina at St. Thomas, Virgin Islands. In Adversary Case No. 80–0294–BKC–JAG–A, the plaintiff asks that if the court does not grant the ejectment, it grant relief from the automatic stay (11 U.S.C. § 362) to permit the plaintiff to pursue an action for ejectment in the appropriate non-bankruptcy forum.

The thrust of the plaintiff's action is that it acquired title to the St. Thomas Sheraton Hotel and Marina property by deed from Aetna Business Credit, Inc. (Aetna) which in turn had obtained title to the property as a result of a deed given by the defendant, All American Holding Corporation (All American) to Aetna in lieu of foreclosure at a time when a mortgage from All American to Aetna was in default.

The defendant, All American, on the other hand asserts that the deed given by it to Aetna constituted only additional security for the preexisting mortgage obligation which would enable Aetna to have its remedy without the necessity of a foreclosure suit in the event of subsequent default by All American of the extended redemption period established in the form of an option for All American to re-purchase the property for fixed sums at various intervals after the agreement was executed. (See Plaintiff's Exhibit No. 5.) As an additional affirmative defense All American alleged in the alternative that its conveyance to Aetna was fraudulent by reason of the insufficiency of the purchase price at a time when All American was in extreme financial difficulty and had other creditors both secured and unsecured. The result reached by the court makes it unnecessary to determine the merits of this affirmative defense.

Nordic American Banking Corporation (Nordic) was permitted to intervene as a party defendant because it was a party to the transactions here at issue and in connection with those transactions had paid on behalf of All American $1,500,000 to Aetna or its wholly owned subsidiary, ITL–AAH, Inc., (ITL) and was extended the same option rights as were given All American.

At the conclusion of the plaintiff's presentation of its evidence, the defendants moved that the complaints in each of the adversary proceedings be dismissed and that judgment for defendants be entered. The defendants argued that the testimony of the plaintiff's witnesses and all of the exhibits admitted into evidence not only failed to establish that the deed to Aetna was an absolute conveyance but rather, conclusively proved that the entire transaction constituted a security device only. The court reserved ruling upon the motions of the defendants to dismiss, whereupon the

defendants rested without presenting further evidence. (Without objection to their being admitted out of turn during the presentation of the plaintiff's case, the court received defendant All American's Exhibits A through H as evidence in these proceedings.)

Based upon the evidence and the applicable law, the court agrees with the defendants' position. The conclusions reached and the judgments being entered make it unnecessary to rule separately on the defendants' motions to dismiss.

The relevant factual background is as follows. In July, 1978 All American borrowed $5,000,000 from Aetna and, in addition to the promissory note evidencing the indebtedness, executed various security agreements, including a mortgage deed on the St. Thomas Sheraton Hotel and Marina property. In May, 1979 the loan was in default. Before taking any legal action on the default Aetna assigned the note and mortgage to its wholly owned subsidiary ITL which was initially formed for the purpose of receiving such assignment. Immediately thereafter in September, 1979 ITL became one of the petitioning creditors in an involuntary bankruptcy proceeding commenced against All American in this court (Case No. 79–1109) under Chapter X of the Bankruptcy Act then in effect. All American vigorously contested that proceeding.

Prior to trial on the involuntary petition, the parties entered into a stipulation which was incorporated and approved in an order of this court dated October 18, 1979 (Plaintiff's Exhibit No. 1). The stipulation and order provided in part that the parties had until January 30, 1980 within which to reach a complete settlement or proceed further in Bankruptcy Court.

A settlement was in fact reached on January 30, 1980 which involved the execution of several documents on that date (and the next day as to the so-called management contract). Pursuant to that agreement and those documents [letter agreement between Aetna/ITL and Nordic (Plaintiff's Exhibit No. 3); agreement between All American and Nordic (Plaintiff's Exhibit No. 4);

agreement among All American, ITL, and Nordic (Plaintiff's Exhibit No. 5); deed from All American to Aetna (Plaintiff's Exhibit No. 6); and management contract between Aetna and All American (Plaintiff's Exhibit No. 7)] Nordic paid $1,500,000 to ITL on behalf of All American, the Chapter X proceeding in this court was dismissed, various security agreements which had previously been given by All American to Aetna and assigned by Aetna to ITL were assigned by ITL to Nordic, deed to the hotel property was given by All American to Aetna, and a management agreement whereby All American retained possession and operation of the hotel property was entered into between All American and Aetna.

No satisfaction of the mortgage from All American to Aetna (then held by ITL) was executed or delivered and the original promissory note was retained by ITL. One of the settlement documents, the so-called settlement agreement (Plaintiff's Exhibit No. 5), provided for the repurchase of the property by All American or Nordic upon payment of the various amounts listed. The option price increased on a monthly basis by an amount approximating the interest accrual on the original note and mortgage. There was a slight difference between what the interest would have been and the figures used, which was explained by Richard Polivy, vice president of Aetna as being the estimated "cost of funds" to Aetna during this period of time. Aetna also placed in escrow with its attorney a deed back to All American which was to be delivered if All American complied with the requirements of the settlement agreement to exercise its option.

In February, 1980 Aetna and ITL commenced discussions with American Motor Inns, Inc., another of its large borrowing customers in the hotel and motel industry, to sell the right, title and interest which Aetna and ITL then had as a result of the January 30, 1980 transactions. There had been a casual inquiry between Aetna/ITL and American Motor Inns as early as about November, 1979 but the conversation went

no further at that time. Pursuant to the negotiations which commenced in February, 1980, an agreement was reached on March 10, 1980 between Aetna and ITL on the one hand and American Motor Inns, Inc. and its wholly owned subsidiary Atlas Motor Inns, Inc., (Atlas), the plaintiff in these adversaries, on the other. By this agreement, ITL assigned the note and mortgage to American Motors and Aetna conveyed the property by deed to Atlas. The former deed from All American to Aetna had been recorded. Aetna and Atlas agreed that the deed from Aetna to Atlas would not be recorded and that the entire transaction between Aetna/ITL and American Motors/Atlas would be kept secret from All American and Nordic. For this assignment and conveyance American Motors and Atlas paid to Aetna and ITL $3,656,549.22 which was the precise amount at which All American and Nordic had the option to repurchase the property as of March 31, 1980, the increment date immediately following the transaction between Aetna/ITL and American Motors/Atlas on March 10, 1980. Atlas agreed to pay Aetna an additional $250,000 if neither All American nor Nordic exercised their option and Atlas was able to obtain title insurance without exception with respect to all that had theretofore transpired. In the meantime Aetna was to act as agent for Atlas and American Motor Inns.

It should be noted that in the documents between Aetna/ITL and American Motor Inns/Atlas, ITL represented that the original mortgage loan obligation was extant and that its balance was not less than the amount being paid by Atlas which was the repurchase option price at that particular time. Ben Richardson, vice president and general counsel of American Motor Inns and Atlas testified that he always understood that the mortgage and note were still in full force and effect notwithstanding the conveyance by deed. Richard Polivy was ambiguous on the issue of whether or not the obligation had been extinguished by the conveyance.

All American continued to possess, manage and operate the property under the management agreement until August 31, 1980, its original termination date and thereafter through extensions of the termination date to September 30, 1980. Since September 30, 1980, it has continued in possession and management of the property as a result of its having filed a voluntary petitioner under chapter 11 of the Bankruptcy Code on September 30, 1980.

While the facts may be somewhat complex, the issue to be decided by the court in these adversaries is clear cut. That issue is whether or not the entire transaction results in Atlas as grantee from Aetna having the ownership of the property or whether its interest is one of a secured party only with the deed as security in addition to the note and mortgage which was assigned by Aetna to ITL and thence to American Motor Inns. Based upon the evidence the court concludes that the plaintiff Atlas has only a security interest in the said property. That security interest may be held in conjunction with its parent, American Motor Inns, as a result of the complex transactions above described.

All of the parties have ably presented their positions to the court in the form of oral presentation at the trial and clear and comprehensive memoranda post trial.

In reaching its decision the court has determined that the law of the Virgin Islands is the applicable law in this case. Many states, such as Florida (§ 697.01 F.S.A.), have statutes which deem a deed given primarily to secure a debt to be a mortgage and the courts of those states have held such instruments to be mortgages rather than deeds under fact patterns similar to those presented here. [*McLendon v. Davis*, 131 So.2d 765 (Fla.App.1961); *In re San Francisco Industrial Park, Inc.*, 307 F.Supp. 271 (N.D.Cal.1969); *Townsend v. Wingler*, 114 Cal.App.2d 64, 249 P.2d 613 (1952); *Schulte v. Cleri*, 39 A.D.2d 692, 332 N.Y. S.2d 518 (1972); *Mills v. Reneau*, 411 P.2d 516 (Okl.1966); *Warner v. Gosnell*, 8 Ill.2d 24, 132 N.E.2d 526 (1956)]. The prevailing view in states which have no such statute is that such instruments are in fact security

devices rather than conveyances and are called equitable liens in those states. [A representative sample of the scores of cases in those jurisdictions read by the court includes *Lewis v. Miller*, 226 Ark. 560, 291 S.W.2d 255 (1956); *Hardy v. Neville*, 261 N.C. 454, 135 S.E.2d 48 (1964); *Neal v. Dover*, 217 Ga. 545, 123 S.E.2d 760 (1962); *Starns v. Adams*, 484 S.W.2d 454 (Tex.Civ. App.1972); *Kohler v. Gilbert*, 216 Or. 483, 339 P.2d 1102 (1959); *F. Gregorie & Son v. Hamlin*, 257 S.E.2d 699 (S.C.1979); *Swallow Ranches, Inc. v. Bidart*, 525 F.2d 995 (9th Cir. 1975) applying Nevada law; *Gibbons v. Gibbons*, 103 Utah 266, 135 P.2d 105 (1943); *Gagne v. Hoban*, 280 Minn. 475, 159 N.W.2d 896 (1968); *Greene v. Bride & Son Construction Company*, 252 Iowa 220, 106 N.W.2d 603 (1960); *Welsh v. Griffith Prideaux, Inc.*, 60 N.J.Super. 199, 158 A.2d 529 (1960); *Boysun v. Boysun*, 104 Mont. 85, 368 P.2d 439 (1962); *Moorer v. Tensaw Land & Timber Co.*, 20 So.2d 105 (Ala.1944); *In re Euclid Doan Co.*, 104 F.2d 712 (6th Cir. 1939) applying Ohio law; *Parrish v. McDaniel*, 358 S.W.2d 32 (Mo.1962); *Foard v. Snider*, 205 Md. 435, 109 A.2d 101 (1954); *Kerfoot v. Kessener*, 227 Ind. 58, 84 N.E.2d 190 (1949)]. Apparently the Virgin Islands has no statute such as Florida's regarding the deeming of conveyances to be mortgages under such circumstances.

■ Plaintiff has asserted that it must prevail under V.I.Code Ann. tit. 28, § 125 which provides:

> When a deed purports to be an absolute conveyance in terms, but is made or intended to be made defeasible by force of a deed of defeasance or other instrument for that purpose, the original conveyance shall not be thereby defeated or affected as against any person other than the maker of the defeasance, or his heirs or devisees, of [sic] persons having actual notice thereof, unless the instrument of defeasance is recorded in the office of the recorder of deeds.

No interpretation or case law decided under this or a similar statute has been cited to the court, but it is apparent that plaintiff does not fall within the protection of the statute. Plaintiff conceded in argument that the phrase "of persons having actual notice" must be a typographical error and should be read as "or persons having actual notice." Plaintiff, Atlas, had such actual notice. At the time Aetna conveyed its deed to Atlas, full disclosure of the January 30, 1980 Aetna—All American settlement, and all documents pertaining thereto, was made to Atlas. Whatever interpretation Atlas made of those documents, it had actual notice of the facts.

■ Likewise, the Virgin Islands statute of frauds, asserted by plaintiff, does not avail plaintiff. The security device character of the transaction does not depend upon an unwritten side agreement between the parties. All documents creating the security interest were in writing and executed by all parties; it is only the interpretation and the effect to be given to the documents which is in controversy.

■ The Virgin Islands has adopted a statute, V.I.Code Ann. tit. 1, § 4 which provides:

> The rules of the Common Law as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

Since we are unable to find a directly applicable section in the American Law Institute Restatement of the Law, (nor does plaintiff cite any to us) in reaching our conclusion here, we follow the prevailing view in American jurisdictions in which there is no statute governing the facts of this case.

The parties agree that the cases cited reflect several indicia to be considered by courts in determining whether putative conveyances are in fact absolute conveyances or mere security devices. Those factors applied to the facts in this case are as follows:

■ First, there existed a prior debt between All American and Aetna (which was assigned by Aetna to ITL). Virtually all of

the evidence supports the contention by All American that this debt did survive. Evidence supporting this is the repurchase option at a price nearly equal to the amount of the indebtedness plus interest accrued to the various times when the option could be exercised, retention of the original note and mortgage without the satisfaction or cancelling of either, the representation to American Motors by ITL and Aetna that the debt was valid and subsisting and that All American had no defenses to it.

Financial embarrassment of the grantor/debtor is also an element to be taken into consideration. The court concludes that the existence of the involuntary Chapter X petition on January 30, 1980 and the voluntary chapter 11 petition filed within ten months thereafter, coupled with the non-payment on the note (or repurchase under the option) indicates that all was not well financially with All American during this period of time.

Another element taken into consideration is the grantor's retaining of possession of the property after the conveyance. This was accomplished through the management agreement which provided for no payment of any rent and permitted the "manager," All American, to retain any profits that were engendered during its period of operation under the management agreement.

Whether or not there was adequate consideration for the putative conveyance must also be considered. In this case there was no independent evidence presented as to the value of the property on January 30, 1980 or any other time. The original mortgage in 1979 was for $5,000,000 and this had increased through the accrual of interest and other charges. On January 30, 1980 as part of the settlement, Nordic paid to Aetna $1,500,000, reducing the balance of the indebtedness to slightly in excess of $3,500,-000 at that time. It was established that the parties were aware of two appraisals which had been prepared on the property in December, 1979, one showing that it was worth in excess of $8,800,000 and the other concluding that it was worth between $5,500,000 and $6,000,000. These appraisals were admitted not as to their accuracy of valuation but only for the purpose of showing that the parties were aware of them. The evidence fails to show that there was any negotiation as to the value of the property in connection with the conveyance by All American to Aetna pursuant to the settlement of January 30, 1980 and that the only figures used in connection therewith were those figures representing the balance of the indebtedness. The testimony of Polivy and Richardson that the value of the property was approximately $3,500,000 was not persuasive.

As to the next element there is no doubt that the grantor All American retained an option to repurchase at a price based upon the preexisting indebtedness. It should also be noted that Aetna was in the business of lending money and not in the business of operating resort hotels and marinas.

The defendant, All American, offered no evidence in support of its counterclaims filed in the adversary proceedings.

Therefore, as required by B.R. 921(a), a separate Final Judgment is being entered in each adversary proceeding denying to the plaintiff the relief sought by it in its complaints and denying to the defendant, All American, the relief sought by it in its counterclaims.